UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN


DOUGLAS H. HARDY, M.D., GLENN CHAMPION, ESQ.              CASE NO.

DYLAN TENT, ET AL, As Representatives of a

Class of Real Estate Brokers and Agents,


PLAINTIFFS,

V.


NATIONAL ASSOCIATION OF REALTORS,

MICHIGAN ASSOCIATION OF REALTORS,

THE GROSSE POINTE BOARD OF REALTORS,

GREATER METROPOLITAN ASSOCIATION OF

REALTORS, NORTH OAKLAND COUNTY BOARD

 OF REALTORS AND REALCOMP II,


DEFENDANTS.

---

MICHAEL S. CLAWSON PLLC

Michael S. Clawson P35728

Attorney for Plaintiffs

41000 Woodward Ave., Suite 395 East

Bloomfield Hills, Michigan 48304

(248)433-4366

msc@mikeclawsonlaw.com

---

**CLASS ACTION COMPLAINT**

PLAINTIFFS, Douglas H, Hardy, M.D., Glenn Champion, Esq., Dylan Tent, et al., allege as follows:

## PRELIMINARY STATEMENT

This class action complaint is being filed challenging the requirement that all Realtors and brokers in the State of Michigan be members of the National Association of Realtors, the Michigan Association of Realtors, and a local Board of Realtors such as The Grosse Pointe Board of Realtors, The Greater Metropolitan Association of Realtors and/or The North Oakland County Board of Realtors to access the Multiple Listing Service, the "MLS". RealComp II is the software company that manages the MLS and regulates the use of the MLS by brokers and agents. The Plaintiffs also challenge the compulsory membership in these associations upon what is essentially a violation of the Anti-Trust laws, Economic Coercion, Unfair Restraint on Trade and Conspiracy. These claims are predicated in part on the recent settlement by the NAR of a national class action lawsuit which eliminated the broker's compensation transparency for buyers and restrained sellers' choice by prohibiting sellers from making offers of compensation though the MLS essentially inviting Brokers and agents to participate in deceptive compensation practices, a requirement which Plaintiffs neither agree with nor believe will benefit the consumers or their industry. Further, these changes encourage discrimination among Sellers and Sellers' agents which will negatively affect consumers, agents and brokers.

## NATURE OF THE CASE

1. The Individual Plaintiffs (hereinafter referred to as Plaintiffs) bring this action on behalf of themselves and a class of similarly situated Real Estate Brokers and Agents seeking to redress the wrongful acts of the Defendants which have resulted in a loss of all Plaintiffs' earning potential as a collective group, a detriment to their businesses as a whole, and a mandatory requirement that they belong to these associations which no longer results in a financial benefit to them.

2. The compulsory nature of membership in the Defendants organizations in order to access the

MLS is a violation of their ability to conduct business in a fair and unencumbered manner which has resulted and will continue to result in them incurring damages.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367. The Court has personal jurisdiction over the Defendants pursuant to 18 U.S.C. §§ 1965(b) and (d).

4.  Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. 1391 (a) and (b).

## PARTIES

## THE PLAINTIFFS

5.  Douglas Hardy, MD is the owner of Snyder Kinney Bennett and Keating LLC which is a Michigan Limited Liability Company and which does business in Southeastern Michigan as Signature Sotheby's International Realty. Signature Sotheby's International Realty of Novi and Signature Sotheby's International Realty of Grosse Pointe are also subsidiaries of Signature Sotheby's and also operate in the real estate business (the Sotheby entities). These entities consist of approximately 100 agents and brokers. All of these entities, specifically their Agents and Brokers engage in the listing and sale of real property, primarily residential, and all are members of the National Association of Realtors (NAR), the Michigan Association of Realtors (MAR) and local organizations such as the Grosse Pointe Board of Realtors (GPBOR), the Greater Metropolitan Association of Realtors (GMAR) and the North Oakland County Board of Realtors (NOCBOR).

6.  Douglas Hardy and Glenn Champion are the primary brokers for the Sotheby entities and operate their business in Southeastern Michigan. Dylan Tent is a representative of all agents and /or associate brokers for the Sotheby entities and also conducts business in Southeastern Michigan.

7.  All of the Plaintiffs are real estate professionals who hold valid Real Estate Licenses in the State of Michigan and who, in order to use the MLS, must be members of NAR, MAR and local organizations such as GPBOR, GMAR and NOCBOR.

8.  All of the Plaintiffs earn their living based upon the marketing and sale of real property and the commissions derived therefrom. All Plaintiffs are required to pay dues to the Defendants, and all Plaintiffs are required to be members of the aforementioned in order to access the information on the MLS.

## THE DEFENDANTS

9.  Defendant NAR is a national organization with its headquarters located at 430 N. Michigan Avenue, Chicago, Illinois. Defendant MAR is a statewide organization located at 720 N. Washington Ave., Lansing, Michigan. GPBOR is a local organization located at 710 Notre Dame Street, Suite 2, Grosse Pointe, Michigan. GMAR is a local organization located at 24725 West 12 Mile Road, Suite 100, Southfield, Michigan 48034. NOCBOR is a local organization located at 4400 West Walton Boulevard, Waterford, Michigan 48329. REALCOMP II is a software company located at 27555 Farmington Road, Suite 325, Farmington Hills, Michigan 48334.

10. All Defendants solicit real estate Broker and Agent professionals throughout the State of Michigan.

11. The Defendants own operate and maintain the MLS which is an electronic listing service which publishes all of the real estate listings, the specific characteristics of each property, the commission agreement, property taxes and all other pertinent information regarding the property. Up until recently, the MLS contained clear and unambiguous information regarding a broker's commission.

12. While the NAR up until recently predicated access to the MLS upon being a member of its

organization, it changed this policy after a series of cases in Florida, Georgia and Alabama, and California found the compulsory membership to be an unfair restraint of trade. Despite this, the NAR has transferred this mandatory membership requirement to the state and local boards which essentially perpetuates their same compulsory membership practices which have been found to be illegal. In fact, NAR charters each of the local boards of Realtors and sets the rules and guidelines for how each shall operate. Specifically, Plaintiffs are required to be members of all three entities, NAR, MAR and a local Board, in order to utilize the MLS service.

13.  NAR, through MAR and local boards such as the GPBOR, GMAR and NOCBOR continue to require membership in their organizations to utilize the MLS without exception. The local boards, such as GBOR, GMAR and NOCBOR, et al are the sole owners of Real Comp and control the membership and use of the MLS.

## FACTUAL ALLEGATIONS COMMON TO ALL OR MULTIPLE COUNTS AGAINST ALL DEFENDANTS

14. The Plaintiffs are Real Estate Brokers, and Agents all licensed as realtors in the State of Michigan and are all engaged in the sale of primarily residential real property.

15. The Plaintiffs are all compulsory members of the Defendant organizations. In early 2024, Plaintiffs initially contacted Defendants and requested that they be allowed to use the MLS system without being members. Alternatively, Plaintiffs requested that they be allowed to drop their membership in these organizations altogether.  These requests were echoed and repeated in June and July 2024.

16. Real Comp II, MAR and the local Boards all responded to the Plaintiffs' inquiry uniformly denying this request and reiterating that membership in all three of these entities was mandatory without exception.  This membership requirement is mandatory to access the MLS even though NAR allows access to non-Realtors.

17. Defendants mandate membership in their organizations which is akin to mandating membership in a union or other trade organization depriving the members of free choice. Additionally, the Defendants charge significant membership fees which Plaintiffs have paid in the past and continue to pay today.

18. Up until recently, as a part of being a member in the Defendant organizations, Plaintiffs were provided with a guarantee of commission pursuant to the Broker Fee component of the MLS.

19. In November 2023, Defendant NAR agreed to settle several class action lawsuits, (the Sitzer Burnett Class Action) and as a part of those settlements, agreed to do away with the guaranteed broker commission.  Pursuant to the settlement, NAR propagated a new MLS rule which prohibited offers of compensation being listed on the MLS.

20. This decision, made largely without any input by the Defendants members, greatly diminished any value created by the compulsory membership requirement in their organizations as there is now no guarantee of broker commission associated with using the MLS. This truly eliminated the sole purpose of the NAR and MAR sponsored MLS systems by eliminating the guarantee of compensation between brokers. Further, while NAR and MLS have argued that the removal of this information is for the benefit of the consumer, Plaintiffs believe it is contrary thereto and invites side negotiations, disharmony among agents and brokers and confusion for the consuming public and even allows for individual and potentially discriminatory pricing per buyer which is a fair housing violation.

21. In addition, the requirement of membership in the Defendant organizations constitutes a conspiracy to monopolize the use of the MLS and creates barriers to the market for all realtors, agents and brokers who seek to enter the market but who do not wish to belong to one of the Defendant organizations.

22. Further, the Settlement of NAR's Class Action lawsuits and the removal of the compensation

guarantee for Brokers results in a lack of transparency for Buyers and Sellers in terms of commission compensation and invites deceptive practices which have and will continue to adversely affect Plaintiffs. This is contrary to the original intent of the <u>Sitzer Burnett</u> Class Action lawsuit.

## CLASS ALLEGATIONS

23. Plaintiffs bring this action individually and on behalf of a class of similarly situated Individuals defined as all real estate agents and brokers in the state of Michigan who are required to be a member of the Defendants in order to use the MLS although each holds a valid real estate license in the state of Michigan. Specifically, the Class of Plaintiffs consists of the following:

    a. All real-estate agents and brokers who are required to be members of the NAR;

    b. All real-estate agents and brokers who are required to be members of the MAR;

    c. All real-estate agents and brokers who are required to be members of a local board such as the GPBOR, GMAR and NOCBOR;

    d. All real estate agents and brokers who must use REALCOMP II in order to access the MLS.

24. In addition to the compulsory membership requirements in order to use the MLS, on or about July 10, 2024, RealComp II issued a policy change which in effect made NAR rule prohibiting offers of compensation in the MLS effective as of July 16, 2024 even though the NAR rule is not scheduled to go into effect until August 17, 2024.  This decision essentially jeopardizes the agreed upon compensation for all pending transactions and will negatively affect those transactions.

25. There are well defined common questions of fact and law which exist as to all members of the

Class and that predominate over any questions affecting only individual members of the Class and which may be determined without the reference to the individual circumstances of any Class member and include, but are not limited to, whether the compulsory nature of membership in the Defendant organizations constitutes an unfair restraint on trade and economic coercion, violates the Anti-Trust laws, and is a result of a conspiracy among the Defendants.

26. In addition, there is a common question among all Class members whether these actions have and will continue to have an adverse economic effect on the Class members.

27. Also, as to real-estate professionals, who are members of the Class, now that the NAR has unilaterally agreed to change the tenants of the MLS, there is no benefit derived from being a member as to commission guarantees. This affects both agents and brokers.

28. Neither Plaintiffs nor their counsel have any adverse interest to or in conflict with the interests of the absent members of the Class. Plaintiffs are able to fairly and adequately represent and protect the interests of the Class.  Plaintiffs will vigorously pursue these claims. If necessary, Plaintiffs may seek leave of this Court to amend the class action and to include additional class representatives or additional claims as may be appropriate.

29. A class action is superior to other available methods of a fair and efficient adjudication of this controversy because individual litigation of these claims for all Class members would be impracticable. Further individual litigation would be burdensome to the courts, and could result in varying, inconsistent and contradictory judgments and would greatly magnify the delay and

expense to all parties and to the court system from multiple trials of the same factual issues.

**COUNT ONE**

**RESTRAINT OF TRADE AND ANTI-TRUST VIOLATIONS**

**VIOLATION OF THE MICHIGAN ANTI-TRUST REFORM ACT**

30. Plaintiff re-allege and incorporate by reference herein all of the allegations contained above.

31. The Michigan Anti-Trust Reform Act, MCL Section 445.771 prohibits any legal entity from using a contract, combination of entities or a conspiracy between 2 or more persons in the restraint of or to monopolize trade or commerce in a relevant market.

32. Here, Plaintiffs all conduct business in the real estate market in the State of Michigan, and all are required by Defendants to be members of their organizations in order to use the MLS.

33. Defendants' mandatory membership requirement in their organizations constitutes a combination of entities which seek to restrain the Plaintiffs from doing business in the State of Michigan. Specifically, these organizations, as a group, require that all Plaintiffs be members in order to access the information contained on the MLS.

34. Such a requirement is a restraint of trade as it deprives the Plaintiffs of free choice as to whether to be a member and seeks to monopolize the information contained on and access to the MLS.

35. Plaintiffs have requested that they be allowed to opt out of membership and have been routinely informed that they cannot do so.

36. Defendants' actions in this regard constitute a violation of the Michigan Anti-Trust Reform Act and have and will continue to cause Plaintiffs to incur damages.

**COUNT II**

**RESTRAINT OF TRADE AND ANTI-TRUST VIOLATIONS**

**15 USC SECTIONS 1-38**

37. Plaintiffs re-allege and incorporate all of the allegations contained above.

38. The Sherman Anti-Trust Act, codified at 15 USC Sections 1-38, protects trade and commerce against unlawful restraints and monopolies.

39. Defendants' requirement that Plaintiffs be members of their organizations in order to access the information contained on the MLS constitutes an unfair restraint on trade which is in violation of the Anti-Trust Act.

40. Such a requirement is a restraint of trade as it deprives the Plaintiffs of free choice as to whether or not to be a member and seeks to monopolize the information contained on and access to the MLS.

41. Defendants 'mandatory membership requirement in their organizations constitutes a combination of entities which seek to restrain the Plaintiffs from doing business in the State of Michigan. Specifically, these organizations  as a group require that all Plaintiffs be members in order to access the information contained on the MLS.

42. Plaintiffs have requested that they be allowed to opt out of membership and have been routinely informed that they cannot do so.

43. Defendants' actions in this regard constitute a violation of the Federal Anti-Trust Act and have and will continue to cause Plaintiffs to incur damages.

**COUNT III**

**CIVIL CONSPIRACY**

44. Plaintiffs re-allege and incorporate all of the allegations contained above.

45. Defendants collectively control access to the MLS.

46. Defendants mandate membership in their organizations in order to essentially hold hostage access to the MLS only allowing those entities and persons who pay membership fees access to same.

47. In order to perpetuate the above scheme and continue to mandate the class members to comply with their membership requirements, Defendants use their overwhelming economic power and market dominance to coerce Plaintiffs

48. Defendants further wield their economic power and market dominance in a coercive manner by unilaterally refusing Plaintiffs such as the Sotheby Entities from opting out of membership.

49. Defendants' extortionate conduct is made more effective by, and enforced through, their conspiracy.

**COUNT IV**

**ECONOMIC COERCION**

50. Plaintiffs re-allege and incorporate all of the allegations contained above.

51. Defendants collectively control access to the MLS.

52. Defendants mandate membership in their organizations in order to essentially hold hostage access to the MLS only allowing those entities and persons who pay membership fees access to same.

53. In order to perpetuate the above scheme and continue to mandate the class members to comply with their membership requirements, Defendants use their overwhelming economic power and market dominance to coerce Plaintiffs into becoming and staying members.

54. These actions constitute economic coercion, particularly in light of the fact that the Plaintiffs have

requested that they be allowed to opt out of membership and have been denied.

Defendants' actions have and will continue to cause Plaintiffs to incur damages.

**RULE 23(a)**

**Typicality**

55. The named Plaintiffs and the members of the Class and Subclasses each and all have tangible and legally protectable interests at stake in this action.

56. The claims of the named class representatives and the absent Class and Subclass members have a common origin and share a common basis.  Their claims originate from the same illegal, extortionate, fraudulent and conspiratorial abetting practices of the Defendants, and the Defendants act in the same way toward the Plaintiffs and the members of the Class and Subclasses.  As such, each named Plaintiff has been the victim of the illegal practices at the hands of the Defendants as set forth herein.

57. The proposed Class and Subclass representatives state claims for which relief can be granted that are typical of the claims of absent Class and Subclass members.  If brought and prosecuted individually, the claims of each Class and Subclass member would necessarily require proof of the same material and substantive facts, rely upon same remedial theories, and seek the same relief.

58. The claims and remedial theories pursued by the named Class representatives are sufficiently aligned with the interests of absent Class and subclass members to ensure that the universal claims of the class and subclasses will be prosecuted with diligence and care by the Plaintiffs as representatives of the class and subclasses.

**Numerosity**

59. The members of the Class and subclasses are so numerous and ascertainable as the names and addresses of all Class and Subclass members can be identified through Plaintiffs' business records.

### Commonality

60. There are questions of law and fact common to the Class as set forth above including the mandatory membership requirements in Defendants organizations and whether that constitutes an unfair restrain on trade.

### RULE 23(a)(4)

61. Plaintiffs' counsel will be able to adequately represent the members of the Class. He has practiced in the area of real estate litigation for over forty (40) years, has represented numerous agents and brokers during this time and is familiar with the claims being asserted in this action.

### RULE 23(b)(1)(A) AND (B)

62. The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

63. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class. Such

incompatible standards and inconsistent or varying adjudications, on what would necessarily

be the same essential facts, proof and legal theories, would also create and allow to exist

inconsistent and incompatible rights within the plaintiff Class.

### RULE 23(b)(3)(2)

64. The questions of law and fact common to members of the Class and Subclasses

predominate over any questions affecting only individual members.

65. A Class Action is superior to other available methods for the fair and efficient

adjudication of the controversies herein in that it will allow for the fair, timely and economical

determination of these issues in one forum and one action as opposed to multiple forums and

multiple actions.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, and members of the Class and Subclasses pray for the following relief:

A.  A Judgment in favor of Plaintiffs and against Defendants on each of the Counts set forth herein.

B.  An award of damages in such amount as will fairly compensate the Plaintiffs and members of
the Class.

C.  An award of costs and attorney fees incurred on behalf of the Plaintiffs; and

D.  Award such other relief as this Honorable Court determines is just to compensate
Plaintiffs and the members of the Class.

### JURY DEMAND

Plaintiffs request a trial by jury in this matter.

Dated: July 24, 2024

Respectfully submitted,

Michael S. Clawson P35728

Attorney for Plaintiffs

41000 Woodward Ave., Suite 395 East

Bloomfield Hills, Michigan 48304

(248)433-4366