## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DOUGLAS H. HARDY, M.D., GLEEN
CHAMPION, ESQ., DYLAN TENT, et al.,
as Representatives of a Class of Real Estate
Brokers and Agents,

Case No. 24-cv-12102

      Plaintiffs,

Hon. Jonathan J.C. Grey

v.

NATIONAL ASSOCIATION OF
REALTORS®, MICHIGAN ASSOCIATION
OF REALTORS®, GROSSE POINTE
BOARD OF REALTORS®, GREATER
METROPOLITAN ASSOCIATION OF
REALTORS®, NORTH OAKLAND
COUNTY BOARD OF REALTORS®, and
REALCOMP II, LTD.,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS THE
## COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendants National Association of REALTORS®, Michigan Association of

REALTORS®, Grosse Pointe Board of REALTORS®, Greater Metropolitan

Association of REALTORS®, North Oakland County Board of REALTORS®, and

Realcomp II, Ltd. (together "Defendants") bring this Motion to Dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails

to state a claim upon which relief can be granted against Defendants.

Pursuant to Local Rule 7.1(a), a meet-and-confer conference was held on October 30, 2024 at 10:00 a.m., wherein counsel for Defendants explained the nature of this motion and sought concurrence in the relief requested (dismissal).  Counsel for Plaintiffs did not concur.

Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6).

Respectfully submitted,

By: */s/ Kimberly L. Scott*
Larry J. Saylor (P28165)
Kimberly L. Scott (P69706)
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
150 W. Jefferson Ave, Suite 2500
Detroit, MI 48226
(313) 963-6420
saylor@millercanfield.com
scott@millercanfield.com
*Attorneys for Defendants National*
*Association of REALTORS® and Michigan*
*Association of Realtors®*

By: */s/ David J. DeVine (w/ consent)*
Sheldon H. Klein (P41062)
David J. DeVine (P70012)
BUTZEL LONG
201 W. Big Beaver, Ste. 1200
Troy, MI 48084
(248) 258-1616
klein@butzel.com
devine@butzel.com
*Attorneys for Defendant Greater Metropolitan*
*Association of REALTORS®*

By: */s/ Richard D. Linnell (w/ consent)*
Richard D. Linnell (P59339)
LINNELL & ASSOCIATES PLLC
2804 Orchard Lake Rd., Suite 203
Keego Harbor, MI 48320
(248) 977-4182
rlinnell@linnellfirm.com
*Attorneys for Defendant North Oakland*
*County Board of REALTORS®*

By: */s/ Jared A. Roberts (w/ consent)*
Jared A. Roberts (P55182)
FRASER TREBILCOCK DAVIS
  & DUNLAP, P.C.
124 West Allegan Street, Ste. 1000
Lansing, MI 48933
(517) 482-5800
jroberts@fraserlawfirm.com
*Attorneys for Defendant Grosse Pointe Board*
*of Realtors®*

2

By: */s/ Brian D. O'Keefe (w/ consent)*
Brian D. O'Keefe (P39603)
Alexander E. Blum (P74070)
Carey L. Robinson (P74146)
LIPPITT O'KEEFE, PLLC
370 East Maple Road, Third Floor
Birmingham, MI 48009
(248) 609-3526
bokeefe@lippittokeefe.com
ablum@lippittokeefe.com
crobinson@lippittokeefe.com

Harvey R. Weingarden (P31534)
WEINGARDEN LAW, PLLC
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
(734) 723-1650
hweingardenlaw@gmail.com

*Attorneys for Defendant Realcomp, II,
Ltd.*

Dated: November 1, 2024

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DOUGLAS H. HARDY, M.D., GLEEN
CHAMPION, ESQ., DYLAN TENT, et al.,
as Representatives of a Class of Real Estate
Brokers and Agents,

      Plaintiffs,

v.

NATIONAL ASSOCIATION OF
REALTORS®, MICHIGAN ASSOCIATION
OF REALTORS®, GROSSE POINTE
BOARD OF REALTORS ®, GREATER
METROPOLITAN ASSOCIATION OF
REALTORS®, NORTH OAKLAND
COUNTY BOARD OF REALTORS®, and
REALCOMP II, LTD.,

      Defendants.

Case No. 24-cv-12102

Hon. Jonathan J.C. Grey

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## THE COMPLAINT FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

ISSUES PRESENTED ................................................................................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

I.     INTRODUCTION ....................................................................................1

II.    SUMMARY OF ALLEGATIONS..........................................................2

III.    ARGUMENT...........................................................................................4

    A.    PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM ..................4

        1.    Plaintiffs' Complaint Is So Vague that Defendants Are Not Fairly on Notice of What Claims Are Being Asserted .......5

        2.    The Requirement of Membership in a REALTOR® Association to Use Realcomp's Services Is Not an Antitrust Violation as a Matter of Law ......................................8

        3.    Plaintiffs Fail to Sufficiently Plead the Elements of a Claim Under Sections 1 or 2 of the Sherman Act ..................10

            a.    Plaintiffs Fail to Plead that Any Defendant Has Market or Monopoly Power in a Relevant Market........10

            b.    Plaintiffs Fail to Adequately Plead Antitrust Injury and Antitrust Standing ..................................................13

        4.    Plaintiffs' Michigan Antitrust Reform Act Claim Fails for the Same Reasons Their Federal Claims Fail ....................15

    B.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSPIRACY ........16

        1.    Plaintiffs' Conspiracy Claims Must Be Dismissed Because Plaintiffs Fail to Plead Concerted Action..................16

        2.    Plaintiffs' Civil Conspiracy Claim Must Be Dismissed Because Plaintiffs Fail to Plead an Underlying Tort ..............19

    C.    PLAINTIFFS' CLAIM FOR "ECONOMIC COERCION" FAILS AS A MATTER OF LAW BECAUSE NO SUCH CLAIM EXISTS.............................................................................................20

    D.    PLAINTIFFS' AMORPHOUS ALLEGATIONS INVOLVING THE *SITZER/BURNETT* PROPOSED CLASS ACTION SETTLEMENT PENDING IN THE WESTERN DISTRICT OF MISSOURI MUST BE DISMISSED.......................................................21

IV.    CONCLUSION......................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*,
    486 N.W.2d 351 (Mich. Ct. App. 1992)............................................................16

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
    670 N.W.2d 569 (Mich. Ct. App. 2003)............................................................19

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
    323 F.3d 366 (6th Cir. 2003) ............................................................................11

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)..........................................................................................10

*Bassett v. NCAA*,
    528 F.3d 426 (6th Cir. 2008) ............................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................4, 5

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)....................................................................................11, 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1997)..........................................................................................13

*Bryant v. McDonough*,
    72 F.4th 149 (6th Cir. 2023) ..............................................................................4

*Buyer's Corner Realty, Inc. v N. Ky. Ass'n of REALTORS*,
    410 F. Supp. 2d 574 (E.D. Ky. 2006)............................................................3, 10

*Calabrese v. St. Mary's*,
    No. 06-cv-13908, 2007 U.S. Dist. LEXIS 10404 (E.D. Mich. Feb. 15, 2007)..11

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)..........................................................................................13

*Carson Real Est. Cos. v. CoStar Grp., Inc.*,
    No. 10-cv-13966, 2011 U.S. Dist. LEXIS 109177
    (E.D. Mich. June 30, 2011)...............................................................................19

*CBC Cos. v. Equifax Inc.*,
    561 F.3d 569 (6th Cir. 2009) ........................................................................11, 14

*City of Pikeville v. Cebridge Acquisition, LLC*,
    No. 23-5770, 2024 U.S. App. LEXIS 10234 (6th Cir. Apr. 25, 2024) ...............7

*Crowder v. Yost*,
    No. 21-cv-103, 2021 U.S. Dist. LEXIS 172847 (S.D. Ohio Sept. 9, 2021).......21

*Detroit Will Breathe v. City of Detroit*,
    524 F. Supp. 3d 704 (E.D. Mich. 2021) ....................................................16, 19

*DXS, Inc. v. Siemens Med. Sys.*,
    991 F. Supp. 859 (E.D. Mich. 1997) ................................................................15

*Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*,
    No. 13-cv-14241, 2014 U.S. Dist. LEXIS 154736
    (E.D. Mich. Oct. 31, 2014) ..............................................................................15

*Est. Constr. Co. v. Miller & Smith Holding Co.*,
    14 F.3d 213 (4th Cir. 1994) ............................................................................19

*Ezzo's Invs., Inc. v. Aveda Corp.*,
    No. 99-6489, 2000 U.S. App. LEXIS 33867 (6th Cir. Dec. 19, 2000) ........12, 18

*Findling v. Realcomp II, Ltd.*,
    No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082
    (E.D. Mich. Mar. 22, 2018) ......................................................................8, 9, 14

*Fletcher v. Western Nat'l Life Ins.*,
    89 Cal. Rptr. 78 (Cal. Dist. Ct. App. 1970) ....................................................20

*Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*,
    244 F.3d 521 (6th Cir. 2001) ..........................................................................12

*FTC v. Ind. Fed'n of Dentists*,
    476 U.S. 447 (1986).........................................................................................9

*Gamrat v. Allard*,
    320 F. Supp. 3d 927 (W.D. Mich. 2018) .........................................................17

*Hooks v. Hooks*,
    771 F.2d 935 (6th Cir. 1985) ..........................................................................17

*HPIL Holding, Inc. v. Zhang*,
   No. 23-cv-12050, 2024 U.S. Dist. LEXIS 91024
   (E.D. Mich. May 21, 2024)...............................................................17

*In re Zinc Antitrust Litig.*,
   155 F. Supp. 3d 337 (S.D.N.Y. 2016) ................................................18

*Kensu v. Corizon, Inc.*,
   5 F.4th 646 (6th Cir. 2021) ..................................................................7

*Kewin v. Mass. Mut. Life Ins. Co.*,
   295 N.W.2d 50 (Mich. 1980)...............................................................20

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
   588 F.3d 908 (6th Cir. 2009) ...............................................................12

*Marie v. Am. Red Cross*,
   771 F.3d 344 (6th Cir. 2014) ................................................................6

*Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
   458 F. Supp. 2d 474 (E.D. Mich. 2006) .......................................12, 19

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ...............................................................13

*Perkins v. Trek Bicycle Corp.*,
   No. 21-cv-179, 2021 U.S. Dist. LEXIS 243615 (W.D. Mich. Oct. 5, 2021) .......7

*Perry v. UPS*,
   90 F. App'x 860 (6th Cir. 2004) .........................................................21

*Phila. Indem. Ins. Co. v. Youth Alive, Inc.*,
   732 F.3d 645 (6th Cir. 2013) ...............................................................21

*Pope v. Miss. Real Est. Comm'n*,
   695 F. Supp. 253 (N.D. Miss. 1988)......................................................9

*Roche Diagnostics Corp. v. Shaya*,
   427 F. Supp. 3d 905 (E.D. Mich. 2019) ..............................................16

*Sitzer v. The Nat'l Ass'n of REALTORS®*,
   No. 19-cv-332 (W.D. Mo. Apr. 29, 2019)............................................22

*Skaates v. Kayser,*
    959 N.W.2d 33 (Mich. Ct. App. 2020) .................................................................. 21

*Smith v. McPharlin,*
    No. 17-cv-13392, 2018 U.S. Dist. LEXIS 151043
    (E.D. Mich. May 11, 2018) ........................................................................................ 6

*Southaven Land Co. v. Malone & Hyde, Inc.,*
    715 F.2d 1079 (6th Cir. 1983) ................................................................................. 14

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross Blue Shield, Inc.,*
    552 F.3d 430 (6th Cir. 2008) ..................................................................... 4, 11, 18

*United States v. Associated Press,*
    326 U.S. 1 (1945) ....................................................................................................... 9

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966) ................................................................................................. 12

*United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.,*
    No. 22-cv-10228, 2024 U.S. Dist. LEXIS 58505
    (E.D. Mich. Mar. 29, 2024) .................................................................................... 11

*Wee Care Child Ctr., Inc. v. Lumpkin,*
    680 F.3d 841 (6th Cir. 2012) .................................................................................. 10

*Young v. Lehigh Corp.,*
    No. 80-cv-4376, 1989 U.S. Dist. LEXIS 11575 (N.D. Ill. Sept. 18, 1989) ....... 10

## STATUTES AND RULES

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 5

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 4

MICH. COMP. LAWS § 445.784(2) ................................................................................ 4, 15

Sherman Act § 1 ................................................................................................. 5, 9, 11, 18

Sherman Act § 2 .................................................................................................................. 11

## ISSUES PRESENTED

Should this Court dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure?

Specifically:

1.    Have Plaintiffs adequately alleged sufficient facts to establish an antitrust violation under either Sections 1 or 2 of the Sherman Act, or under the Michigan Antitrust Reform Act?

      Defendants say "No"

      Plaintiffs say "Yes"

2.    Have Plaintiffs stated a claim for conspiracy among the Defendants?

      Defendants say "No"

      Plaintiffs say "Yes"

3.    Is Plaintiffs' claim for "economic coercion" cognizable under the law?

      Defendants say "No"

      Plaintiffs say "Yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*CBC Cos. v. Equifax Inc.*, 561 F.3d 569 (6th Cir. 2009)

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007)

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008)

*Findling v. Realcomp II, Ltd.*, No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082 (E.D. Mich. Mar. 22, 2018)

## I.     INTRODUCTION

Defendant Realcomp provides a multiple listing service ("MLS") that empowers real estate licensees with reliable, up-to-date real estate information.  To access the benefits Realcomp provides to its subscribers, a real estate licensee must be a REALTOR® (that is, a member of the National Association of REALTORS®, the Michigan Association of REALTORS®, and one or more local REALTOR® organizations—some of which are Defendants in this action).  Those associations are voluntary membership organizations that provide myriad valuable benefits to their members.

Plaintiffs—two real estate brokers and one real estate salesperson—file this purported class action lawsuit alleging that Defendants acted anticompetitively, but only loosely and vaguely connect such allegations to the requirements for participation in Realcomp that they take issue with.  Plaintiffs also complain that the practice changes agreed to as part of the National Association of REALTORS®' unrelated proposed settlement of class action litigation (currently pending in the Western District of Missouri) eliminates Plaintiffs' "guarantee" of commissions for certain real estate transactions.  But how that settlement is alleged to, or even can, form the basis of Plaintiffs' claims is not apparent.

Plaintiffs' Complaint fails to articulate plausible theories establishing elements of any recognized cause of action, and also fails to allege sufficient facts

to establish any claim Plaintiffs have purportedly pled.  Plaintiffs' allegations are so vague that they fail to even meet the minimal "notice pleading" standard.  Even on careful dissection, Defendants cannot identify what cognizable theories of harm Plaintiffs intend to pursue.  Plaintiffs have brought antitrust claims but do not allege any element of an antitrust claim, and even if they did, none of the speculative "harms" Plaintiffs have suffered result from harm to competition.  Plaintiffs also assert a common law "conspiracy" claim but fail to allege an underlying tort, which is essential to a civil conspiracy claim.  Finally, Plaintiffs allege a separate tort—economic coercion—that does not exist under Michigan law.

Plaintiffs' Complaint should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    SUMMARY OF ALLEGATIONS

Plaintiffs Douglas H. Hardy, M.D., Glenn Champion, Esq., and Dylan Tent (together "Plaintiffs") bring purported class action claims against Defendants the National Association of REALTORS® ("NAR"), Michigan Association of REALTORS® ("MAR"), The Grosse Pointe Board of REALTORS® ("Grosse Pointe Board"), Greater Metropolitan Association of REALTORS® ("GMAR"), North Oakland County Board of REALTORS® ("NOCBOR"), and Realcomp II, Ltd. ("Realcomp") (together "Defendants").   Plaintiffs' putative class action

Complaint, ECF No. 1 ("Compl."), contains only nine paragraphs of barebones factual allegations.  Compl. ¶¶ 14–22.

An MLS has been described as "a computerized database of homes for sale" in a given area.  *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*, 410 F. Supp. 2d 574, 576 (E.D. Ky.), *aff'd* 198 F. App'x 485 (6th Cir. 2006).  Realcomp provides MLS services—including "real estate listings, the specific characteristics of each property, . . . property taxes and all other pertinent information regarding the property."  Compl. ¶ 11.  Plaintiffs allege that Realcomp was owned and operated by local boards "such as" Grosse Pointe Board, GMAR, and NOCBOR.  *Id.* ¶ 13.  NAR does not mandate that MLS providers require their participants to be members of a REALTOR® association.  *Id.* ¶ 12.  Plaintiffs allege, however, that Realcomp does have such a requirement.  *Id.* ¶ 13.  Plaintiffs allege that they are "compulsory" members of Defendants' organizations.  *Id.* ¶ 15.

According to Plaintiffs, they lost the "guarantee of commission pursuant to the Broker Fee component of the MLS" because NAR agreed as part of the settlement of unrelated litigation to remove offers of buyer-agent compensation from MLSs.  *Id.* ¶¶ 18, 19, 20, 22.  How this allegation is related to Plaintiffs' claims or alleged damages is unclear.

## III.   ARGUMENT

"A complaint will be dismissed under Rule 12(b)(6) if it does not plead facts, accepted as true and viewed in the light most favorable to the plaintiff, that state a plausible claim to relief." *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023). Under *Twombly*, there must be "specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 570 (2007) (holding that antitrust complaint must be dismissed for failing to "state a claim to relief that is plausible on its face"). And "[a]lthough a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross Blue Shield, Inc.*, 552 F.3d 430, 434 (6th Cir. 2008).

### A. PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM

Plaintiffs' antitrust claims—Count I (Michigan Antitrust Reform Act) and Count II (Sherman Act)—must be dismissed because they are vague and conclusory and, therefore, do not state a claim. *First*, Plaintiffs' allegations fail to articulate any cognizable antitrust theory to satisfy even the lowest bar—Defendants are not on notice of Plaintiffs' claims. *Second*, Plaintiffs allege that to require membership in NAR, MAR, and a local board "in order to use the MLS" violates the antitrust law. Compl. ¶ 23. Yet as a general matter, requiring membership in a trade association in exchange for the benefits of the association does not give rise to an antitrust claim.

*Third*, the Complaint should be dismissed for the independent reason that it lacks sufficient factual allegations to plausibly establish the elements of an antitrust violation—regardless of what antitrust theory Plaintiffs intended.

### 1. Plaintiffs' Complaint Is So Vague that Defendants Are Not Fairly on Notice of What Claims Are Being Asserted

Plaintiffs fail to articulate what antitrust theory they are pursuing, falling far short of the pleading standards set out in *Twombly*. Plaintiffs' claims should be dismissed in their entirety on this ground alone.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has instructed, "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive . . . . 'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'" *Twombly*, 550 U.S. at 558 (citations omitted).

It is telling that Plaintiffs' federal claim, Count II, references "15 USC Sections 1-38," the entire corpus of federal antitrust law. Compl. ¶ 38. It is not clear whether some or all of Plaintiffs' antitrust claims sound in agreement in restraint of trade (Sherman Act § 1, 15 U.S.C. § 1), monopolization (15 U.S.C. § 2), conspiracy to monopolize (§ 2), some combination, or something else—let alone what facts

would support these types of antitrust claims.  Defendants should not be left to guess the claim they are required to defend against.  *See Marie v. Am. Red Cross*, 771 F.3d 344, 365 (6th Cir. 2014) (dismissing claim where plaintiffs "could hardly have made [their] intention less clear" as to what the defendants "needed to defend against"); *Smith v. McPharlin*, No. 17-cv-13392, 2018 U.S. Dist. LEXIS 151043, at *30 (E.D. Mich. May 11, 2018) (dismissing antitrust claims where "the complaint fails to identify 'the antitrust laws' Plaintiffs allege to have been violated" and the complaint otherwise failed to state a claim for violation of the Sherman Act).

The Court need look no further than the allegations in Counts I and II to see the deficiencies here.  Compl. ¶¶ 30–43.  In both counts, Plaintiffs summarily state that the membership requirement "seeks to monopolize the information contained on and access to the MLS."  *Id.* ¶¶ 34, 40.  But Plaintiffs allege no facts to support this legal conclusion.  Plaintiffs also reference "monopolization" in both antitrust counts brought against all six Defendants, but the Complaint lacks a single allegation alleging, let alone supporting, that one or more of the Defendants is a "monopolist." *Id.* ¶¶ 31, 38.  Nor, as discussed below, do Plaintiffs identify the relevant market allegedly monopolized.  *Id.* ¶¶ 34, 40.

Plaintiffs seem to rely on the *same* minimal facts to support a conspiracy to restrain trade.  They allege only that the alleged conduct constitutes "a combination of entities which seek to restrain trade."  *Id.* ¶¶ 33, 41; *see also id.* at 5 ("Factual

6

Allegations *Common to All or Multiple Counts* Against All Defendants" (emphasis added)).  What Plaintiffs are actually alleging Defendants (or some combination of them) did to restrain trade is not apparent from the allegations in the Complaint.

The nine paragraphs of factual allegations do not set forth coherent legal theories, let alone the required factual particularity needed to meet the pleading standard for an antitrust complaint.  *See Perkins v. Trek Bicycle Corp.*, No. 21-cv-179, 2021 U.S. Dist. LEXIS 243615, at *12 (W.D. Mich. Oct. 5, 2021) ("This bare-bones allegation leaves much to the imagination, but it is not for the Court to craft [plaintiff]'s claim for him."), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 28030 (W.D. Mich. Feb. 16, 2022).  The minimal factual allegations supporting Counts I and II of the Complaint therefore do not give Defendants "fair notice" of Plaintiffs' claims or the grounds upon which the claims rest, and this alone is grounds for dismissal.  *See, e.g.*, *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021); *City of Pikeville v. Cebridge Acquisition, LLC*, No. 23-5770, 2024 U.S. App. LEXIS 10234, at *5–6 (6th Cir. Apr. 25, 2024) (affirming district court's dismissal of one of plaintiff's causes of action because "the federal rules prohibit . . . 'obfuscation of the plaintiff's claims'" (quoting *Kensu*, 5 F.4th at 651)).

**2. The Requirement of Membership in a REALTOR® Association to Use Realcomp's Services Is Not an Antitrust Violation as a Matter of Law**

Plaintiffs' antitrust claims, whatever the theory of harm, should be dismissed with prejudice because it is well-established that an organization's rules conditioning full access to its services on membership in that organization do not constitute an antitrust violation.

The Complaint's antitrust counts are based on the allegation that membership in Defendants' organizations is "compulsory" "in order to access the MLS." Compl. ¶¶ 2, 12. The Complaint fails to plead facts about such memberships and how each Defendant is related to the MLS services that Plaintiffs seek. The Complaint simply pleads (falsely) that all "Defendants own operate and maintain the MLS." *Id.* ¶ 11. In other words, the Complaint does not allege that Plaintiffs are forced to do anything, but merely alleges that they cannot access the benefits they want (presumably, listing on the MLS) without paying for one of the requirements of such a benefit (association membership).

Whatever Plaintiffs' inscrutable legal theory, we know from Judge Friedman's opinion in *Findling v. Realcomp II, Ltd.*, No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082, at *10 (E.D. Mich. Mar. 22, 2018) that Defendants have not violated the antitrust laws. In *Findling*, an individual who was not a member of a REALTOR® association argued that he had a right under the antitrust laws to use

8

Realcomp's MLS.  *Id.* at *2–3.  There, plaintiff was not eligible for membership and could not access the MLS.  *Id.* at *13 ("Nowhere does plaintiff allege that if he obtained a broker's license and paid his dues [to a REALTOR® association] defendants would deny his application.").  Here, Plaintiffs are eligible for membership and its benefits but insist that the antitrust laws entitle them to retain their access to Realcomp's MLS without paying their association dues.  The *Findling* court recognized that, at bottom, plaintiff "alleged only that Realcomp is a voluntary trade association with membership benefits," and "[o]ne of its benefits is access to the MLS."  *Id.*  It then held "[t]his, without more, is not a [Sherman Act] § 1 violation."  *Id.* (citing *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458–59 (1986)). Like *Findling*, Plaintiffs' allegations "fail to show that defendants are unreasonably or discriminatorily restricting access to the MLS," nor does the Complaint allege "that the license and dues requirements are unreasonable."  *Id.* at *11.

*Findling* rooted its holding in the "widely recognized" principle "that private organizations may reasonably tie their benefits and services to membership."  *Id.* at *10–11 (citing *United States v. Associated Press*, 326 U.S. 1 (1945)).  Consistent with this approach, *Findling* followed "nationwide consensus" that MLS providers do not commit Sherman Act violations "when they restrict access to member brokers who have paid reasonable fees."  *Id.* at *12; *see also Pope v. Miss. Real Est. Comm'n*, 695 F. Supp. 253, 269 (N.D. Miss. 1988) (holding that defendants did not violate the

9

Sherman Act by requiring REALTOR® association membership as a condition of MLS access); *Buyer's Corner Realty, Inc.*, 410 F. Supp. 2d at 580 (holding that there was no harm to competition when a REALTOR® Association required membership as a condition of MLS access); *Young v. Lehigh Corp.*, No. 80-cv-4376, 1989 U.S. Dist. LEXIS 11575, at *47–48 (N.D. Ill. Sept. 18, 1989) (holding that plaintiff lacked standing when "plaintiff may have suffered an 'injury' in paying for club membership that he did not need or want," but did not plausibly allege how "competition in the country-club market" was adversely affected).

Here, Plaintiffs have alleged nothing more than a desire to have membership benefits without membership. Accordingly, the antitrust claims should be dismissed with prejudice.

### 3. Plaintiffs Fail to Sufficiently Plead the Elements of a Claim Under Sections 1 or 2 of the Sherman Act

Plaintiffs' Complaint must be dismissed for the independent reason that it does not sufficiently plead the elements necessary to state antitrust claims.

### a. Plaintiffs Fail to Plead that Any Defendant Has Market or Monopoly Power in a Relevant Market

The purpose of the antitrust laws is to protect competition. *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 847–48 (6th Cir. 2012) (noting that protecting competition is the "*sine qua non* of the antitrust laws"); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) ("The antitrust laws were enacted

for 'the protection of competition, not competitors.'").  And because, in order to violate the antitrust laws, conduct must harm competition, a plaintiff must plead a relevant market in which competition was harmed.  *See Total Benefits*, 552 F.3d at 437 ("The Supreme Court requires plaintiffs to identify the relevant product and geographic markets so the district court can assess 'what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market.'" (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962))).

A plaintiff alleging a Sherman Act § 1 claim (agreement in restraint of trade) subject to a rule-of-reason analysis, such as the claim here, must plead not only a relevant market, but that the defendant has market power in the relevant market. *Calabrese v. St. Mary's*, No. 06-cv-13908, 2007 U.S. Dist. LEXIS 10404, at *9–10 (E.D. Mich. Feb. 15, 2007) (holding that plaintiff did not plead a viable Section 1 claim when the plaintiff's claim did not "suggest the defendants[] [had] market power or capacity to have an effect on competition").

To state a Sherman Act § 2 claim (monopolization), a plaintiff must plausibly allege "the possession of monopoly power in the relevant market." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 370 (6th Cir. 2003); *United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, No. 22-cv-10228, 2024 U.S. Dist. LEXIS 58505, at *9 (E.D. Mich. Mar. 29, 2024) ("If the alleged monopolist does not possess enough potential power

11

in the relevant market to harm competition, a Section 2 claim cannot be made out."). Monopoly power is "the power to control prices or exclude competition." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).

The first step in determining whether a defendant has market power (or monopoly power) is to plausibly define the relevant product and geographic market. Plaintiffs do neither.  A relevant market consists of both a geographic component and a product component.  *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 916–17 (6th Cir. 2009).  A complaint that fails to sufficiently plead market power in a properly defined antitrust market should be dismissed.  *Id.* at 916; *Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530–31 (6th Cir. 2001) (affirming dismissal of antitrust claims for failure to sufficiently allege market power in the relevant market).

Here, the Complaint's cursory references to "markets" without a market definition are not sufficient to satisfy Plaintiffs' pleading burden on this element. *See, e.g.*, *Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 483 (E.D. Mich. 2006) (rejecting alleged market as too narrow where the market "clearly d[id] not encompass all interchangeable substitute products"); *Ezzo's Invs., Inc. v. Aveda Corp.*, No. 99-6489, 2000 U.S. App. LEXIS 33867, at *11 (6th Cir. Dec. 19, 2000) (affirming dismissal of complaint for failure to allege the relevant product and geographic market).  Plaintiffs use the term

12

"relevant market" one time in the Complaint, ¶ 31, albeit not in the relevant sense, but fail to allege any facts suggesting either the geographic or product contours of such a market. Plaintiffs further allege that "[a]ll Defendants solicit real estate Broker and Agent professionals throughout the State of Michigan," *id.* ¶ 10, but go no further to explain how this fact relates to a market (product or geographic) relevant to their allegations.

### b. Plaintiffs Fail to Adequately Plead Antitrust Injury and Antitrust Standing

Plaintiffs' claims also fail because they have not adequately pled antitrust standing, which is a threshold pleading-stage inquiry. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450–51 (6th Cir. 2007). An essential element of antitrust standing is "antitrust injury," that is, injury "of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' act unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489–90 (1997); *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 & n.5 (1986) (noting that antitrust injury is a "necessary but not always sufficient, element of antitrust standing").

The fact that Plaintiffs have failed to adequately define a relevant market conclusively establishes that they have not alleged antitrust injury because "failure to allege an anti-competitive impact on a relevant market amounts to a failure to allege an antitrust injury." *Bassett v. NCAA*, 528 F.3d 426, 431 (6th Cir. 2008)

13

(affirming dismissal of antitrust claims where complaint contained no allegations of the effect of defendant's enforcement of rules on the relevant market).

In *Findling*, the court held that the plaintiff did not sufficiently plead antitrust standing where he failed to allege any facts about the relevant market or who the major competitors might be.  2018 U.S. Dist. LEXIS 47082, at *6.  The failure to sufficiently allege a relevant market prevented the court from being able to reasonably infer a market-wide injury.  *Id.*  Similarly, here, Plaintiffs do not even identify a relevant market, let alone any competitors in that market.  This Court cannot reasonably draw inferences about harm to competition across a market that has not even been identified.  *See Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085–87 (6th Cir. 1983) (cited in *Findling*, 2018 U.S. Dist. LEXIS 47082, at *5) (affirming dismissal for lack of antitrust standing).

More generally, to establish antitrust injury, a plaintiff must plausibly allege that the defendants' conduct caused a market-wide injury *that harmed competition*. *See Brown Shoe*, 370 U.S. at 320; *CBC Cos. v. Equifax Inc.*, 561 F.3d 569, 572–73 (6th Cir. 2009) (affirming dismissal of complaint where "the facts alleged in [plaintiff's] complaint suggest that [plaintiff's] fundamental frustration [was] with . . . price terms . . . , rather than specific anticompetitive behavior").

Here, Plaintiffs fail to sufficiently plead antitrust standing because the Complaint does not allege any injury to *competition*.  Plaintiffs' allegations relating

to harm are not *antitrust* harms.  Indeed, the antitrust laws are not meant to remedy the litany of unsupported concerns in Plaintiffs' Complaint—concerns which include, for example, Plaintiffs paying for membership dues that they do not want to pay, Compl. ¶ 17, that a separate settlement of unrelated antitrust litigation allegedly "greatly diminished any value" in their memberships, *id.* ¶ 20, and caused "disharmony among agents and brokers."  *Id.*  Plaintiffs do not connect any of these alleged harms to harm to competition and the Complaint should be dismissed.

### 4. Plaintiffs' Michigan Antitrust Reform Act Claim Fails for the Same Reasons Their Federal Claims Fail

The Michigan Antitrust Reform Act ("MARA") mirrors the Sherman Act, expressly follows federal precedent, and relies on federal case law:  "[I]n construing all sections of [the Michigan Antitrust Statute], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes." MICH. COMP. LAWS § 445.784(2) (1984); *see also DXS, Inc. v. Siemens Med. Sys.*, 991 F. Supp. 859, 865 (E.D. Mich. 1997) ("Courts examining claims under [MARA] apply the same legal analysis as courts examining analogous claims under the Sherman Act.").  Thus, Plaintiffs' MARA claim should be dismissed for the same reasons its Sherman Act claim should be dismissed. *See Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, No. 13-cv-14241, 2014 U.S. Dist. LEXIS 154736, at *19 (E.D. Mich. Oct. 31, 2014) (dismissing Michigan antitrust claims after applying Sherman Act analysis to MARA), *aff'd*, 833 F.3d 680 (6th Cir. 2016).

15

## B. PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSPIRACY

Plaintiffs have not sufficiently pled concerted action to support claims for civil conspiracy or a conspiracy under Section 1 of the Sherman Act.  Plaintiffs' civil conspiracy claim must be dismissed for the independent reason that Plaintiffs fail to plead an underlying tort.

### 1. Plaintiffs' Conspiracy Claims Must Be Dismissed Because Plaintiffs Fail to Plead Concerted Action

Under Michigan law, "'[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.'"  *Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992)).  A plaintiff bringing a civil conspiracy claim must allege that (1) there was a single plan, (2) alleged co-conspirators shared in the general conspiratorial objective, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.  *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (citing *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

First, Plaintiffs do not allege the supposed mechanism through which the claimed conspiracy was enacted, let alone allege any details of the time, place, or purported effects of the conspiracy.  *See HPIL Holding, Inc. v. Zhang*, No. 23-cv-

12050, 2024 U.S. Dist. LEXIS 91024, at *28 (E.D. Mich. May 21, 2024) (dismissing civil conspiracy claim where plaintiff's factual allegations did not plausibly establish that the defendants "agreed or planned to do *anything*, let alone anything unlawful").

Second, generic allegations against Defendants without specifying each Defendants' role are insufficient. *See Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (dismissing civil conspiracy claim based on "group pleading," because "a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8" (citation omitted)). Here, Plaintiffs' allegations are insufficient to establish the role that each party played in requiring participation in the Grosse Pointe Board, GMAR, and NOCBOR to access Realcomp—even putting aside whether such a role would be sufficient to establish a conspiracy. Plaintiffs' allegation that "NAR, through MAR and local boards . . . continue to require membership in their organizations to utilize the MLS without exception," Compl. ¶ 13, is also wholly conclusory and insufficient to establish a conspiracy. To start, the Complaint acknowledges that NAR does *not* have mandatory membership requirements for MLS access. *Id.* ¶ 12 (alleging that NAR changed its policy concerning MLS access).

At most, Plaintiffs allege that "Defendants own operate and maintain the MLS." Compl. ¶ 11; *see also id.* ¶ 45 ("Defendants collectively control access to the MLS."); *id.* ¶ 13 (alleging summarily that Defendants GMAR, NOCBOR, and

the Grosse Point Board are owners of Realcomp and thus control membership and use of the MLS). In addition to the group pleading deficiencies, an allegation that a group of Defendants jointly own another entity (that is also a Defendant) is insufficient to plead a conspiracy. *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) ("Mere generalizations as to any particular defendant— or even defendants as a group—are insufficient. The fact that two separate legal entities may have a corporate affiliation—perhaps owned by the same holding company—does not alter this pleading requirement." (citation omitted)).

For the same reasons, Plaintiffs cannot state a claim under § 1 of the Sherman Act. "[G]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*." *Total Benefits*, 552 F.3d at 436–37 (affirming dismissal of antitrust case where plaintiffs' generically pleaded conspiracy lacked specific reference to the "who, what, where, when, how, or why" and did "not supply facts adequate to show illegality"); *see also Ezzo's Invs.*, 2000 U.S. App. LEXIS 33867, at *6 (affirming dismissal of antitrust conspiracy claims where plaintiff failed to put forth any facts that would suggest alleged co-conspirators communicated about an alleged agreement (citing *Est. Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994))). Plaintiffs' general allegations purporting to apply to all Defendants do not suffice. *See Monument Builders*, 458 F. Supp. 2d at 485

("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to any individual cemetery defendant.").

### 2. Plaintiffs' Civil Conspiracy Claim Must Be Dismissed Because Plaintiffs Fail to Plead an Underlying Tort

Plaintiffs' civil conspiracy claim must be dismissed because a civil conspiracy claim must plead a separate actionable tort.  *See, e.g.*, *Detroit Will Breathe*, 524 F. Supp. 3d at 710–11 (dismissing counterclaims where counter-plaintiff rested its civil conspiracy claims on allegations of a "commit[ment to do] unlawful actions," rather than on allegations of a specific, actionable tort); *Carson Real Est. Cos. v. CoStar Grp., Inc.*, No. 10-cv-13966, 2011 U.S. Dist. LEXIS 109177, at *15–17 (E.D. Mich. June 30, 2011) (dismissing claim of civil conspiracy where plaintiff failed to plead facts to support the underlying torts of extortion and unfair competition); *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (holding that plaintiffs failed to establish a claim of civil conspiracy where plaintiffs failed to establish any unlawful purpose or means in defendants' actions, and thus failed to establish an underlying tort).

Here, Plaintiffs' civil conspiracy count does not even recite the legal elements required, nor does it attempt to connect those elements to the actions of any of the Defendants.  Compl. ¶¶ 44–49.  Instead, the Complaint rests its alleged conspiracy

19

on vague reference to Defendants' use of "their overwhelming economic power and market dominance." *Id.* ¶¶ 47–48. Neither allegation constitutes a specific underlying tort, and thus the claim must fail. To the extent that Plaintiffs attempt to support their conspiracy claim by pointing to allegations that Defendants "coerce" Plaintiffs, *id.* ¶ 47, this claim must also fail, as economic coercion—analyzed below—is not an independent tort under Michigan law.

### C. PLAINTIFFS' CLAIM FOR "ECONOMIC COERCION" FAILS AS A MATTER OF LAW BECAUSE NO SUCH CLAIM EXISTS

Michigan law does not recognize a claim of "economic coercion." The only time "economic coercion" appears in Michigan case law is in the context the tort of intentional infliction of emotional distress or the affirmative defense of duress. *See Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 65–66 (Mich. 1980) (Williams, J., dissenting in part) (discussing economic coercion as an element for a claim for tort damages for emotional distress (citing *Fletcher v. Western Nat'l Life Ins.*, 89 Cal. Rptr. 78, 99 (Cal. Dist. Ct. App. 1970) (finding that an insurance company's economic coercion of persuading a disabled and destitute plaintiff to surrender his policy or enter into a disadvantageous settlement was "outrageous" and gave rise to a claim for intentional infliction of emotional distress)); *Skaates v. Kayser*, 959 N.W.2d 33, 43 (Mich. Ct. App. 2020) (discussing economic coercion as an element of an economic duress-based affirmative defense in contract).

20

Because Plaintiffs fail to identity a cognizable theory of economic harm upon which to rest their claim of "economic coercion," the claim must be dismissed.  *See, e.g.*, *Perry v. UPS*, 90 F. App'x 860, 861 (6th Cir. 2004) (affirming dismissal of complaint for failure to state a claim where plaintiff "identified no legal theory upon which relief can be granted"); *Crowder v. Yost*, No. 21-cv-103, 2021 U.S. Dist. LEXIS 172847, at *14 (S.D. Ohio Sept. 9, 2021) ("A complaint must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" (quoting *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)).

### D. PLAINTIFFS' AMORPHOUS ALLEGATIONS INVOLVING THE *SITZER/BURNETT* PROPOSED CLASS ACTION SETTLEMENT PENDING IN THE WESTERN DISTRICT OF MISSOURI MUST BE DISMISSED

Plaintiffs take issue with the proposed class action settlement related to offers of compensation made on MLSs which was entered into by NAR and plaintiff home sellers in cases pending in the Western District of Missouri (the "Settlement").  *See* NAR Settlement Agreement, Mot. for Prelim. Approval of Settlement with the Nat'l Ass'n of Realtors, *Sitzer v. The Nat'l Ass'n of REALTORS®* ("*Sitzer/Burnett*"), No. 19-cv-332 (W.D. Mo. Apr. 19, 2024), ECF No. 1458 at Ex. 1.  Plaintiffs recognize that Realcomp provides them "all of the real estate listings" and "all other pertinent information regarding the property."  Compl. ¶ 11.  Regardless, Plaintiffs assert that the practice changes resulting from the Settlement have injured Plaintiffs by "greatly

diminish[ing] any value" in their memberships to Defendants' organizations, and that the Settlement has led or will also lead to an assortment of other alleged harms. *Id.* ¶¶ 20, 22.  Plaintiffs state that their claims "are predicated in part on the recent settlement by the NAR," though it is not clear if or how these factual allegations relate to the enumerated causes of action.  *Id.* at 2, Preliminary Statement.

Even if these allegations did somehow form the basis of an antitrust claim, which is not apparent from the face of the Complaint, the claim should be dismissed because it is an inappropriate collateral attack on the pending Settlement.

The Settlement—which was reached post-jury verdict and would resolve substantial class action litigation against NAR—received preliminary approval by the Western District of Missouri on April 22, 2024.  *See* Order Granting Prelim. Approval of Proposed Settlement with the Nat'l Ass'n of REALTORS, *Sitzer/Burnett*, ECF No. 1460.  The final approval hearing is on November 26, 2024. *Id.*  As part of the approval process, the Court approved the objection and opt-out period that was open until October 28, 2024.  If Plaintiffs had a concern with the Settlement, they should have brought that concern to the Western District of Missouri, which retained exclusive jurisdiction over the Settlement.

Simply put, Plaintiffs' allegations about a proposed Settlement pending in another court are improper and are completely unrelated to the claims they purport to bring in this Court.

## IV.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, in its entirety, with prejudice.

Respectfully submitted,

By: */s/ Kimberly L. Scott*
Larry J. Saylor (P28165)
Kimberly L. Scott (P69706)
MILLER, CANFIELD, PADDOCK
   AND STONE, P.L.C.
150 W. Jefferson Ave, Suite 2500
Detroit, MI 48226
(313) 963-6420
saylor@millercanfield.com
scott@millercanfield.com
*Attorneys for Defendants National*
*Association of REALTORS® and*
*Michigan Association of Realtors®*

By: */s/ David J. DeVine (w/ consent)*
Sheldon H. Klein (P41062)
David J. DeVine (P70012)
BUTZEL LONG
201 W. Big Beaver, Ste. 1200
Troy, MI 48084
(248) 258-1616
klein@butzel.com
devine@butzel.com
*Attorneys for Defendant Greater*
*Metropolitan Association of*
*REALTORS®*

By: */s/ Richard D. Linnell (w/ consent)*
Richard D. Linnell (P59339)
LINNELL & ASSOCIATES PLLC
2804 Orchard Lake Rd., Suite 203
Keego Harbor, MI 48320
(248) 977-4182
rlinnell@linnellfirm.com
*Attorneys for Defendant North*
*Oakland County Board of*
*REALTORS®*

By: */s/ Jared A. Roberts (w/ consent)*
Jared A. Roberts (P55182)
FRASER TREBILCOCK DAVIS
   & DUNLAP, P.C.
124 West Allegan Street, Ste. 1000
Lansing, MI 48933
(517) 482-5800
jroberts@fraserlawfirm.com
*Attorneys for Defendant Grosse Pointe*
*Board of Realtors®*

23

By: */s/ Brian D. O'Keefe (w/ consent)*
Brian D. O'Keefe (P39603)
Alexander E. Blum (P74070)
Carey L. Robinson (P74146)
LIPPITT O'KEEFE, PLLC
370 East Maple Road, Third Floor
Birmingham, MI 48009
(248) 609-3526
bokeefe@lippittokeefe.com
ablum@lippittokeefe.com
crobinson@lippittokeefe.com

Harvey R. Weingarden (P31534)
WEINGARDEN LAW, PLLC
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
(734) 723-1650
hweingardenlaw@gmail.com

*Attorneys for Defendant Realcomp, II, Ltd.*

Dated: November 1, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, I electronically filed the foregoing document using the electronic court filing system, which will send notification of such filing to all counsel of record.


By: */s/ Kimberly L. Scott*