UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN


DOUGLAS H. HARDY, M.D., GLENN CHAMPION, ESQ.          CASE NO.24-cv-12102

DYLAN TENT, ET AL, As Representatives of a           HON. Jonathan J.C. Grey

Class of Real Estate Brokers and Agents,             Mag. Judge David D. Grand


                         PLAINTIFFS,


                                                     CLASS ACTION

V.


NATIONAL ASSOCIATION OF REALTORS,

MICHIGAN ASSOCIATION OF REALTORS,

THE GROSSE POINTE BOARD OF REALTORS,

GREATER METROPOLITAN ASSOCIATION OF

REALTORS, NORTH OAKLAND COUNTY BOARD

OF REALTORS AND REALCOMP II,


                         DEFENDANTS.

---

MICHAEL S. CLAWSON PLLC
Michael S. Clawson P35728
Attorney for Plaintiffs
41000 Woodward Ave., Suite 395 East
Bloomfield Hills, Michigan 48304
(248) 433-4366
msc@mikeclawsonlaw.com

---


**<u>FIRST AMENDED COMPLAINT</u>**

---

**1 |** P a g e

PLAINTIFFS, Douglas H, Hardy, M.D., Glenn Champion, Esq., Dylan Tent, et al., pursuant to FRCP 15(a)(1) file their amended complaint, stating as follows:

## PRELIMINARY STATEMENT

This class action complaint challenges the requirement that all Realtors, Brokers and Agents in the State of Michigan and nationally be members of the National Association of Realtors, their state board of realtors such as the Michigan Association of Realtors, and a local Board of Realtors such as The Grosse Pointe Board of Realtors, The Greater Metropolitan Association of Realtors and/or The North Oakland County Board of Realtors to access the Multiple Listing Service, known as the "MLS". REALCOMP II is a software company that manages the MLS and regulates its use by brokers and agents. The Plaintiffs challenge the compulsory membership in these associations to gain access to the MLS and the information it provides and allege that this pattern and practice of the Defendants constitutes a violation of the Anti-Trust laws, Unfair Restraint on Trade, a Monopoly and Conspiracy. While these alleged patterns and practices by Defendants have existed for years, the recent settlement by the NAR of a national class action lawsuit out of Missouri eliminated the requirement of a broker's compensation to be reflected on the MLS, essentially inviting brokers and agents to participate in deceptive compensation practices, and greatly diminished any value these organizations had to individuals such as the Plaintiffs. Thus, this compulsory membership and the changes implemented and required by NAR as a result of the settlement, have rendered membership in these organizations of no benefit. Yet to successfully practice the sale of residential real estate and access the information compiled by the MLS, nationally and in the State of Michigan, membership in these organizations is mandatory. This required membership creates a restraint of

trade to real estate brokers and agents who do not wish to belong to these organizations as brokers and agents consider the use of the MLS to be a necessity.  Plaintiffs have standing to bring these claims as they have suffered an anti-trust injury, and they are an efficient enforcer of the anti-trust laws.  The real estate market is the relevant market and access to the MLS is a product which Plaintiffs seek to access. Defendants have tremendous market power as they tie membership in their organizations to accessing the information available on the MLS. This pattern and practice also constitutes a monopoly in that brokers and agents would be unable to fairly compete with other realtors who are members of these organizations as these organizations prohibit access to the information contained in the MLS without membership. Moreover, this information is not available from any other source. Defendants also require members such as Plaintiffs to pay yearly membership fees to at least three organizations for each broker and agent. This practice is not limited to Michigan and in fact is present in most states where these requirements are similarly dictated by the NAR and the state and local boards.  Defendants coerce Plaintiffs to belong to their organizations by wielding their market power and thereby force brokers and agents into membership and paying their requisite fees. This tying of membership to the MLS has a substantial effect on Interstate commerce. In Southeastern Michigan alone, there are over 16,000 members in Defendant organizations paying tens of millions of dollars to Defendants in order to access the MLS.   Plaintiffs seek to challenge this compulsory membership and Defendants' policies as unlawful.

## **NATURE OF THE CASE**

1.      The Individual Plaintiffs (hereinafter referred to as "Plaintiffs") bring this action on behalf of themselves and a class of similarly situated Real Estate Brokers and Agents seeking to redress the wrongful acts of the Defendants which have resulted in a loss of all Plaintiffs'

earning potential as a collective group, a detriment to their businesses as a whole, and a mandatory requirement that they belong to these associations which no longer results in a benefit to them.

2.      The information contained on the MLS and which is entirely controlled by the Defendants is not available from any other source.

3.      The compulsory nature of membership in Defendants' organizations in order to access the MLS is a restraint on their ability to conduct business in a fair and unencumbered manner which has resulted and will continue to result in them incurring damages.

4.      The compulsory nature of these memberships creates a monopoly among Brokers and agents who are members of these groups and preclude those who are not from accessing the information available through the MLS.

5.      The Defendants are monopolists as they, through their mandatory membership requirements, control the real estate market by denying those who are not members from accessing information which is vital to them doing business.

6.      In order to access the information maintained on the MLS, which includes the property's history, tax information, past sales information, assessments, valuation, size, acreage, sales data and several other important statistics, Defendants require membership in the national, state and local organizations.

7.      The Defendant organizations control access to the information contained on the MLS and therefore control the marketing and sale of residential real estate which  constitutes the market.

8.      The information contained on the MLS is unique, and there is no other alternative available to Plaintiffs which contains the same or substantially similar information.

9.   Each of these organizations charges brokers and agents a separate yearly membership fee in order to belong to these boards and access the information contained on the MLS. Therefore, each broker and agent is charged 3 fees; one each for the national, state and local boards.

10.   Historically, while membership in these organizations was tolerated by the Plaintiffs and other similarly situated brokers and agents, recent changes and requirements implemented by the National Association of Realtors, the Michigan Board of Realtors and the local boards of realtors have made these memberships of no value other than to access the MLS.

11.   Prior to initiating this action, Plaintiffs reached out to the National Association of Realtors, the Michigan Board of Realtors and the other named Defendants specifically asking that they be exempt from membership.

12.   In response to each inquiry, Plaintiffs were informed that membership was a mandatory requirement, and they would not be allowed to access the MLS if they were not members and did not pay the full membership fees.

13.   Plaintiffs do not seek to be allowed access to the MLS information *gratis*, rather, they seek to be able to access the information without the necessity of belonging to at least three organizations; the NAR, the Michigan Association of Realtors and a local board of realtors and paying three sets of fees for each broker and agent.

14.   Access to the MLS through mandatory membership in these organizations creates a market wide injury and essentially eliminates competition from those brokers and agents who are not members.

15.   Defendants' mandatory membership requirements create a tying arrangement between membership and access to the MLS which is unreasonable because membership in these

organizations is not voluntary but compulsory.

16. Further, the assessment of fees by at least three different organizations, the NAR, the State Board and the local Board, is unreasonable and excessive, especially for those brokers and agents who practice in smaller firms or individually.

17. Defendants' required membership in their organizations, the fees which are assessed by them and the restriction of access to information on the MLS, which is essential to a Broker or agent transacting business, constitutes a restraint of trade.

18. Defendants' practice of requiring mandatory membership in their organizations creates a monopoly over the real estate market as they have complete control over the information on the MLS which brokers and agents consider a necessity in order to do business.

19. Although licensed in the State of Michigan, real estate brokers and agents are precluded from accessing the MLS without these compulsory memberships and paying the fees associated with them.

20. Brokers and agents have no alternate source to the information contained on the MLS.

21. Plaintiffs have standing to challenge this practice as they have suffered an anti-trust injury and are appropriate parties to enforce the antitrust laws as they are brokers and agents who conduct business in the real estate market.

22. Plaintiffs' claims qualify as anti-trust violations as they focus on the tying of two (2) separate products and services: membership in the Defendants' organizations and access to the MLS in a relevant market, the residential real estate market.

23. Defendants' exclusive control over the MLS equates to tremendous market power which they exercise over Plaintiffs and other similar parties.

24. This power and the tying of membership to the use of the MLS is unreasonable and has a

substantial effect on interstate commerce as it creates millions of dollars in fees for the Defendants each year.

25. Defendants have a tremendous economic interest in promoting its practices as these practices directly generate the fees they receive.

26. Defendants' uniform policies and procedures which require mandatory membership in their organizations, and their exclusive control over the MLS, is knowing, intentional and overt and constitutes a concerted action to monopolize.

27. Defendants' practices and actions render them monopolists as they hold significant market power in the real estate arena, specifically Michigan and southeast Michigan, which allows them to control the market and diminish or eliminate competition.

## JURISDICITON AND VENUE

28. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has personal jurisdiction over the Defendants pursuant to 18 U.S.C. §§ 1965(b) and (d).

29. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. 1391 (a) and (b).

## PARTIES

## THE PLAINTIFFS

30. Douglas Hardy, MD is the owner of Snyder Kinney Bennett and Keating LLC which is a Michigan Limited Liability Company, and which does business in Southeastern Michigan as Signature Sotheby's International Realty. Signature Sotheby's International Realty of Novi and Signature Sotheby's International Realty of Grosse Pointe are also subsidiaries

of Signature Sotheby's and also operate in the real estate business (the Sotheby entities).

These entities consist of approximately 100 brokers and agents. All of these entities,

specifically their brokers and agents, engage in the listing and sale of real property,

primarily residential, and all are members of the National Association of Realtors (NAR),

the Michigan Association of Realtors (MAR) and local organizations such as the Grosse

Pointe Board of Realtors (GPBOR), the Greater Metropolitan Association of Realtors

(GMAR) and the North Oakland County Board of Realtors (NOCBOR).

31.    Douglas Hardy and Glenn Champion are the primary brokers for the Sotheby entities and

operate their business in Southeastern Michigan. Dylan Tent is a representative of all

agents and /or associate brokers for the Sotheby entities and also conducts business in

Southeastern Michigan.

32.    All of the Plaintiffs are real estate professionals who hold valid Real Estate Licenses in

the State of Michigan and who, in order to use the MLS, must be members of NAR,

MAR and at least one (1) local organization such as GPBOR, GMAR and NOCBOR.

33.    All of the Plaintiffs earn their living based upon the marketing and sale of real property and

the commissions derived therefrom. All Plaintiffs are required to pay dues to the

Defendants, and all Plaintiffs are required to be members of the aforementioned in order to

access the information on the MLS.

## THE DEFENDANTS

34.    Defendant NAR is a national organization with its headquarters located at 430 N.

Michigan Avenue, Chicago, Illinois. Defendant MAR is a statewide organization located

at 720 N. Washington Ave., Lansing, Michigan. GPBOR is a local organization located at

710 Notre Dame Street, Suite 2, Grosse Pointe, Michigan. GMAR is a local organization

located at 24725 West 12 Mile Road, Suite 100, Southfield, Michigan 48034. NOCBOR is a local organization located at 4400 West Walton Boulevard, Waterford, Michigan 48329. REALCOMP II is a software company located at 27555 Farmington Road, Suite 325, Farmington Hills, Michigan 48334.

35.   All Defendants solicit real estate broker and agent professionals throughout the State of Michigan.

36.   The Defendants own operate and maintain the MLS which is an electronic listing service which publishes all of the real estate listings, the specific characteristics of each property, the commission agreement, property taxes and all other pertinent information regarding the property. Up until recently, the MLS contained clear and unambiguous information regarding a broker's commission.

37.   While the NAR up until recently predicated access to the MLS upon being a member of its organization, it changed this policy after a series of cases in Florida, Georgia and Alabama, and California found the compulsory membership to be an unfair restraint of trade. Despite this,  NAR has transferred this mandatory membership requirement to the state and local boards, which essentially perpetuates their same compulsory membership practices which have been found to be illegal. In fact, NAR charters each of the local boards of Realtors and sets the rules and guidelines for how each shall operate. Specifically, Plaintiffs are required to be members of all three entities, NAR, MAR and a local board, in order to utilize the MLS service.

38.   NAR, through MAR and local boards such as the GPBOR, GMAR and NOCBOR continue to require membership in their organizations to utilize the MLS without exception. The local boards, such as GBOR, GMAR and NOCBOR, et al are the sole

owners of REALCOMP II and control the membership and use of the MLS.

## **FACTUAL ALLEGATIONS COMMON TO ALL OR MULTIPLE COUNTS**
## **AGAINST ALL DEFENDANTS**

39.     The Plaintiffs are Real Estate Brokers and Agents licensed as realtors in the State of Michigan and are all engaged in the marketing and sale of primarily residential real property.

40.     The Plaintiffs are all compulsory members of the Defendant organizations.

41.     In early 2024, Plaintiffs initially contacted Defendants and requested that they be allowed to use the MLS system without being members. Alternatively, Plaintiffs requested that they be allowed to drop their membership in these organizations altogether.   These requests were echoed and repeated in June and July 2024.

42.     REALCOMP II, MAR and the local boards all responded to the Plaintiffs' inquiry uniformly denying this request and reiterating that membership in all three of these entities was mandatory without exception.

43.     This membership requirement is mandatory for Plaintiffs to access the MLS even though NAR allows access to non-Realtors.

44.     Defendants mandate membership in their organizations which is analogous to mandating membership in a union or other trade organization depriving the members of free choice.

45.     Additionally, the Defendants charge significant membership fees which Plaintiffs have paid in the past and continue to pay today.

46.     Up until recently, as a part of being a member in the Defendant organizations, Plaintiffs were provided with a guarantee of commission pursuant to the Broker Fee component of the MLS.

47.    In November 2023, Defendant NAR agreed to settle a class action lawsuit which had, as a part of the settlement, an agreement to remove the guaranteed broker commission from the MLS.  Pursuant to the settlement, NAR propagated a new MLS rule which prohibited offers of compensation being listed on the MLS.  Each of the Defendants adopted this rule and implemented it.

48.    This change had the effect of diminishing transparency regarding broker and agent commissions as they were no longer part of the MLS and were not published.

49.    This decision greatly diminished any value created by the compulsory membership requirement in their organizations as there is now no guarantee of broker commission associated with using the MLS.

50.    This truly eliminated the sole purpose of the NAR and MAR sponsored MLS systems by eliminating the guarantee of compensation between brokers.

51.    Further, while NAR and MLS have argued that the removal of this information is for the benefit of the consumer, Plaintiffs believe it is contrary thereto and invites side negotiations, disharmony among agents and brokers and confusion for the consuming public and even allows for individual and potentially discriminatory pricing per buyer which is a fair housing violation, none of which is a benefit to the consumer.

52.    Despite this lack of benefit, Plaintiffs are required to belong to Defendants' organizations in order to do business as they alone control access to the MLS.

53.    The requirement of membership in the Defendant organizations constitutes a conspiracy to monopolize the use of the MLS and creates barriers to the market for all realtors, agents and brokers who seek to enter the market but who do not wish to belong to one of the Defendant organizations.

54.     The compulsory nature of Plaintiffs' membership in the Defendants' organizations in order to access the MLS is a restraint on their ability to conduct business in a fair and unencumbered manner which has resulted in and will continue to result in them incurring damages.

55.     The compulsory nature of these memberships creates a monopoly among brokers and agents who are members of these groups and preclude those who are not from accessing the information available through the MLS.

56.     The Defendants are monopolists as they, through their mandatory membership requirements, control the real estate market by precluding those who are not members from accessing information which is vital to brokers and agents doing business.

57.     In order to access the information maintained on the MLS, which includes the property's history, tax information, past sales information, assessments, valuation, size, acreage and several other important statistics, Defendants require membership in the national, state and local organizations.

58.     The Defendant organizations have exclusive control over the information contained on the MLS and access to it.

59.     The information contained on the MLS is unique and there is no other alternative available to Plaintiffs which contains the same or substantially similar information. Although licensed in the State of Michigan to sell real estate, brokers and agents are precluded from accessing the MLS unless they are members of these organizations. Brokers and agents consider access to this information a necessity in order to do business.

60.     Each of these organizations charges brokers and agents separate membership fees in order to belong to these boards and access the information contained on the MLS.

61. Historically, while membership in these organizations was tolerated by the Plaintiffs and other similarly situated Brokers and agents, recent changes and requirements implemented by the National Association of Realtors, the Michigan Board of Realtors and the local boards of realtors has made these memberships of no value other than access to the MLS.

62. Plaintiffs do not seek to be allowed access to the MLS information *gratis*, rather, they seek to be able to access the information without the necessity of belonging to at least three organizations; the NAR, the Michigan Association of Realtors and a local board of realtors.

63. The sale of residential real estate is largely governed by Defendants. In fact, according to REALCOMP II's own website, it has a membership in southeast Michigan alone of 16,000 brokers and agents, roughly half of all licensed brokers and agents in the State of Michigan. These numbers illustrate the hold Defendants have on the market.

64. Defendants control the real estate market as they have complete control and access to information which is vital to a broker or agent's practice in the field of residential real estate sales, information which is not available from any other source.

65. Defendants' control over the real estate market constitutes monopoly control over the market and is unreasonable.

66. Defendants' control over this market negatively affects competition, causes market-wide injury and limits consumer choice in that in order to do business in the real estate market, one must be a member of the Defendant organizations.

67. Access to the MLS through mandatory membership in these organizations creates this injury and limits or eliminates competition from those brokers and agents who are not

members.

68. Defendants participate in a single plan whereby they have conspired to require mandatory membership in each of their organizations in order to practice in the residential real estate arena.

69. Defendants coordinate membership policies and fee structures which benefit each of them financially.

70. This uniform and consistent enforcement of policies and procedures which mandates membership in order to access the MLS is knowing, intentional and overt and constitutes a concerted action on the part of Defendants.

71. The effect of the conspiracy is to create this three-tiered mandatory membership requirement which generates substantial fees to each of the Defendants and forecloses brokers and agents from practicing in the real estate arena without membership.

72. There are over 34,000 licensed realtors in the State of Michigan generating over 20 Million Dollars in fees annually thereby illustrating the enormous financial benefit being realized by Defendants.

73. The mandatory nature of these memberships, the tying of membership to the MLS and the fees assessed create economic harm, particularly for smaller brokers and agencies with less capital, making it harder for them to compete.

74. Simply put, Plaintiffs wish to be able to practice as agents and brokers in the real estate market without the mandatory requirement of belonging to at least three different boards and paying three different fees for each broker or agent that is a member. Further, they wish to be able to access the MLS without the same mandatory requirements as dictated by the Defendants.

75. Plaintiffs requested permission to opt out of this required membership and were denied.

76. This denial and the resulting mandatory membership requirement to access the MLS is wrongful and has and will continue to cause Plaintiffs to be damaged.

## CLASS ALLEGATIONS

77. Plaintiffs bring this action individually and on behalf of a class of similarly situated Individuals defined as all real estate agents and brokers in the State of Michigan who are required to be a member of the Defendants in order to use the MLS even though each holds a valid real estate license to practice in the State of Michigan. Specifically, the Class of Plaintiffs consists of the following:

   a. All real-estate agents and brokers who are required to be members of the NAR;

   b. All real-estate agents and brokers who are required to be members of the MAR;

   c. All real-estate agents and brokers who are required to be members of a local board such as the GPBOR, GMAR and NOCBOR;

   d. All real estate agents and brokers who must use REALCOMP II in order to access the MLS.

78. There are well defined common questions of fact and law which exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class and which may be determined without the reference to the individual

circumstances of any Class member and include, but are not limited to, whether the

compulsory nature of membership in the Defendant organizations constitutes an unfair

restraint on trade and economic coercion, violates the Anti-Trust laws, and is a result of a

conspiracy among the Defendants.

79.    In addition, there is a common question among all Class members whether these actions

have and will continue to have an adverse economic effect on the Class members.

80.    Also, as to real-estate professionals, who are members of the Class, now that the NAR has

unilaterally agreed to change the tenants of the MLS, there is no benefit derived from being

a member as to commission guarantees. This affects both agents and brokers.

81.    Neither Plaintiffs nor their counsel have any adverse interest to or in conflict with the

interests of the absent members of the Class. Plaintiffs are able to fairly and adequately

represent and protect the interests of the Class.  Plaintiffs will vigorously pursue these

claims.  If necessary, Plaintiffs may seek leave from this Court to amend the class action

and to include additional class representatives or additional claims as may be appropriate.

A class action is superior to other available methods of a fair and efficient adjudication of

this controversy because individual litigation of these claims for all Class members would

be impracticable. Further individual litigation would be burdensome to the courts, and

could result in varying, inconsistent and contradictory judgments and would greatly

magnify the delay and expense to all parties and to the court system from multiple trials of

the same factual issues.

## COUNT ONE

### RESTRAINT OF TRADE AND ANTI-TRUST VIOLATIONS

### VIOLATION OF THE MICHIGAN ANTI-TRUST REFORM ACT

82. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

83. The Michigan Anti-Trust Reform Act, MCL Section 445.771 prohibits any legal entity from using a contract, combination of entities or a conspiracy between 2 or more persons in the restraint of or to monopolize trade or commerce in a relevant market.

84. Here, Plaintiffs all conduct business in the real estate market in the State of Michigan, and all are required by Defendants to be members of their organizations in order to access the MLS.

85. Defendants' mandatory membership requirements in their organizations constitute a combination of entities which seek to restrain the Plaintiffs from doing business in the State of Michigan. Specifically, these organizations, as a group, require that all Plaintiffs be members in order to practice as brokers and agents and to access the information contained on the MLS.

86. Such a requirement and the act of tying membership in their organizations to accessing the MLS is a restraint of trade as it deprives Plaintiffs of free choice as to whether to be a member and seeks to monopolize the information contained on and access to the MLS.

87. Defendants control the information on the MLS which is unique, and which is not available from any other source.

88. Each Defendant ties access to this information to membership in their organizations and

charges substantial fees to each broker and agent.

89. This practice impedes competition and causes a market wide impediment to those brokers and agents who are not members and those who do not wish to be members.

90. This practice negatively affects consumer choice and market competition as there are no alternatives to the MLS.

91. This practice of compulsory membership generates millions of dollars for the Defendants annually.

92. Plaintiffs have requested that they be allowed to opt out of membership and have been routinely informed that they cannot do so.

93. Defendants' actions in this regard constitute a violation of the Michigan Anti-Trust Reform Act and have and will continue to cause Plaintiffs to incur damages.

## COUNT II

## RESTRAINT OF TRADE AND ANTI-TRUST VIOLATIONS

## 15 USC SECTION 1

94. Plaintiffs re-allege and incorporate all of the allegations contained above.

95. The Sherman Anti-Trust Act, codified at 15 USC Sections 1, protects trade and commerce against unlawful restraints and monopolies.

96. A restraint on trade is determined by the rule of reason and is unlawful if it is unreasonable based upon the relevant circumstances.

97. Defendants' requirement that Plaintiffs be members of their organizations to access the information contained on the MLS constitutes an unfair restraint on trade which is in violation of the Anti-Trust Act.

98.   Such a requirement and the practice of tying membership to accessing the MLS is a restraint of trade as it deprives the Plaintiffs of free choice as to whether to be a member and forces Plaintiffs to be members of their organizations to gain access to information only available on the MLS.

99.   Further, Defendants require, as a part of this mandatory membership, the payment of fees by each broker and agent to each of the Defendants to gain access to the information on the MLS.

100.   Defendants' mandatory membership requirement in their organizations constitutes a combination of entities which restrain the free conduct of business.

101.   The act of tying membership to MLS access is unreasonable and impedes Plaintiffs from doing business in the State of Michigan as they have no choice in practicing in the real estate arena but to maintain membership in these organizations against their will.

102.   This practice of compulsory membership generates millions of dollars for Defendants annually.

103.   Plaintiffs have repeatedly requested that they be allowed to opt out of membership and have been routinely informed that they cannot do so.

104.   Plaintiffs have also repeatedly asked to opt out of membership and be allowed to access the MLS under different circumstances and have been denied.

105.   The actions of Defendants have caused a market wide injury as it affects all brokers and agents who wish to practice in the residential real estate arena and limits competition to only those brokers and agents who conform to Defendants' mandatory requirements.

106.   Defendants' refusal to allow Plaintiffs access to the MLS under any other circumstances other than agreeing to full membership in each of their mandatory organizations is a

restraint on trade as defined by 15 USC, Section 1.

107.   Defendants' actions in this regard constitute a violation of the Federal Anti-Trust Act and

have and will continue to cause Plaintiffs to incur damages.

## COUNT III

## ANTI-TRUST VIOLATIONS

## 15 USC SECTION 2

108.   Plaintiffs re-allege and incorporate all of the allegations contained above.

109.   Section 2 of The Sherman Act protects against monopolies in a relevant market.

110.   To prevail under Section 2, a party must plausibly allege that the Defendants possess a

monopoly power over the market in which they are engaged.

111.   Defendants possess absolute market power as they control, through their membership

requirements, access to information which is vital to practicing as a broker or agent in the

residential real estate market and which is not available through any other source.

112.   Defendants locally and the NAR nationally control the sale of residential real estate.

They, for example, set all of the rules and regulations governing the sale of residential

real estate in Michigan and require membership in the local, state and national boards in

order to access information on the MLS; information which is not available from any

other source, and which is necessary for brokers and agents to do business.

113.   The Defendants control access to the MLS which is essentially the only source for real

estate information in the industry.

114.   The control by Defendants of this information and their refusal to allow access to it

without the compulsory joining of a local, state and national board essentially eliminates

any competition and leaves no remedy for Plaintiffs and those similarly situated but to join these organizations.

115.   This control has a market-wide effect on competition, and Defendants' practices are anti-competitive and essentially create a monopoly which controls the MLS and its information.

116.   Moreover, this practice of tying membership to access the MLS has a negative effect on consumer choice and market competition due to the lack of any alternative to the MLS.

117.   This monopoly generates millions of dollars in fees annually for the Defendants and creates a substantial effect on Interstate Commerce.

118.   Defendants have a substantial economic interest in keeping Plaintiffs and other similar parties in their organizations.

119.   Defendants' actions in this regard constitute a violation of the Federal Anti-Trust Act and have and will continue to cause Plaintiffs to incur damages.

**COUNT IV**

**CIVIL CONSPIRACY**

120.   Plaintiffs re-allege and incorporate all of the allegations contained above.

121.   Defendants collectively control access to the MLS.

122.   Defendants mandate membership in their organizations in order to hold hostage access to the MLS only allowing those entities and persons who pay membership fees the ability to access to same.

123.   In order to perpetuate the above scheme and continue to mandate the class members to comply with their membership requirements, Defendants use their overwhelming economic power and market dominance to coerce Plaintiffs into belonging to these

organizations.

124. Defendants further wield their economic power and market dominance in a coercive manner by unilaterally refusing Plaintiffs from opting out of membership.

125. Defendants' extortionate conduct is made more effective by, and enforced through, their conspiracy.

126. Defendants participate in a single plan whereby they have conspired to require mandatory membership in each of their organizations in order to effectively practice in the residential real estate arena.

127. Each of the Defendants shares the same general conspiratorial objective which is to mandate that real estate brokers and agents be members in each of their organizations.

128. The Defendants collude to coordinate policies which require membership thus allowing them to benefit financially.

129. Further, this required membership and Defendants overt act of prohibiting Defendants from canceling their membership is indicative of and furthers the objectives of this conspiracy.

130. Each of the Defendants, individually and jointly, participates and have participated in this conduct for many years.

131. Each local organization requires membership in the state and national organization so essentially membership in all three is required in order to access the MLS and practice in the residential real estate industry.

132. The effect of the conspiracy is to create mandatory membership which generates substantial fees totaling millions of dollars to each of the Defendants and forecloses brokers and agents from practicing in the real estate arena without membership.

133.   The Defendants knowingly participate in this concerted conduct with an intent to monopolize the market and do so overtly.

134.   Defendants' actions in this regard creates a conspiracy which has and will continue to cause Plaintiffs to incur damages.

## RULE 23(a)

### Typicality

135.   The named Plaintiffs and the members of the Class and Subclasses each and all have tangible and legally protectable interests at stake in this action.

136.   The claims of the named class representatives and the absent Class and Subclass members have a common origin and share a common basis.  Their claims originate from the same illegal, extortionate, fraudulent and conspiratorial abetting practices of the Defendants, and the Defendants act in the same way toward the Plaintiffs and the members of the Class and Subclasses.  As such, each named Plaintiff has been the victim of the illegal practices at the hands of the Defendants as set forth herein.

137.   The proposed Class and Subclass representatives state claims for which relief can be granted that are typical of the claims of absent Class and Subclass members.  If brought and prosecuted individually, the claims of each Class and Subclass member would necessarily require proof of the same material and substantive facts, rely upon same remedial theories, and seek the same relief.

138.   The claims and remedial theories pursued by the named Class representatives are sufficiently aligned with the interests of absent Class and subclass members to ensure that the universal claims of the class and subclasses will be prosecuted with diligence and care by the Plaintiffs as representatives of the class and subclasses.

**Numerosity**

139. The members of the Class and subclasses are so numerous and ascertainable as the names and addresses of all Class and Subclass members can be identified through Plaintiffs' business records.

**Commonality**

140. There are questions of law and fact common to the Class as set forth above including the mandatory membership requirements in Defendants organizations and whether that constitutes an unfair restrain on trade.

**RULE 23(a)(4)**

141. Plaintiffs' counsel will be able to adequately represent the members of the Class. He has practiced in the area of real estate litigation for over forty (40) years, has represented numerous agents and brokers during this time and is familiar with the claims being asserted in this action.

**RULE 23(b)(1)(A) AND (B)**

142. The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

143. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the

Class which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the plaintiff Class.

### **RULE 23(b)(3)(2)**

144.   The questions of law and fact common to members of the Class and Subclasses predominate over any questions affecting only individual members.

145.   A Class Action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that it will allow for the fair, timely and economical determination of these issues in one forum and one action as opposed to multiple forums and multiple actions.

### **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs, and members of the Class and Subclasses pray for the following relief:

A.   A Judgment in favor of Plaintiffs and against Defendants on each of the Counts set forth herein.

B.   An award of damages in such amount as will fairly compensate the Plaintiffs and members of the Class.

C.   An award of costs and attorney fees incurred on behalf of the Plaintiffs; and

D.   Award such other relief as this Honorable Court determines is just to compensate Plaintiffs and the members of the Class.

## <u>JURY DEMAND</u>

Plaintiffs request a trial by jury in this matter.

Respectfully submitted,

Dated: November 21, 2024.

*/s/ Michael S. Clawson*

Michael S. Clawson P35728

Attorney for Plaintiffs

41000 Woodward Ave., Suite 395 E

Bloomfield Hills, Michigan 48304

(248)433-4366

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 21, 2024, I electronically filed the foregoing First Amended Complaint using the electronic court filing system which will send notification of such filing to all counsel of record.

*/s/ Michael S. Clawson*

Attorney for Plaintiffs
