# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DOUGLAS H. HARDY, M.D., GLENN CHAMPION, ESQ., DYLAN TENT, ET AL., as representatives of a class of real estate brokers and agents,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS, MICHIGAN ASSOCIATION OF REALTORS, THE GROSSE POINTE BOARD OF REALTORS, GREATER METROPOLITAN ASSOCIATION OF REALTORS, NORTH OAKLAND COUNTY BOARD OF REALTORS, AND REALCOMP II LTD.,<br><br>Defendants. | Case No. 2:24-cv-12102-JJCG-DRG<br><br>Hon. Jonathan J.C. Grey<br><br>**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** |

Defendants National Association of REALTORS®, Michigan Association of REALTORS®, The Grosse Pointe Board of REALTORS®, Greater Metropolitan Association of REALTORS®, North Oakland County Board of REALTORS®, and Realcomp II Ltd. (together "Defendants") bring this Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") (ECF No. 27) pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure because the FAC fails to state a claim upon which relief can be granted.

Pursuant to Local Rule 7.1(a), a meet-and-confer conference was held on January 8, 2025, wherein counsel for Defendants explained the nature of this motion and sought concurrence in the relief requested (dismissal).  Counsel for Plaintiffs did not concur.

Defendants respectfully request that this Court dismiss Plaintiffs' FAC in its entirety, with prejudice, pursuant to Rule 12(b)(6).

Dated:  January 15, 2025

MILLER CANFIELD PADDOCK & STONE, P.L.C.

By:  *s/ Larry J. Saylor*
  Larry J. Saylor (P28165)
  Kimberly L. Scott (P69706)
  150 W. Jefferson Ave
  Suite 2500
  Detroit, MI 48226
  Tel: 313-963-6420
  saylor@millercanfield.com
  scott@millercanfield.com

  *Attorneys for Defendants National*
  *Association of REALTORS® and*
  *Michigan Association of REALTORS®*

LINNELL & ASSOCIATES PLLC

By:  *s/ Richard D. Linnell*
  Richard D. Linnell
  2804 Orchard Lake Road, Suite 203
  Keego Harbor, MI 48320
  Tel: 248-977-4182
  rlinnell@linnellfirm.com

  *Attorneys for Defendant North Oakland*
  *County Board of REALTORS®*

BUTZEL LONG

By: *s/ David J. DeVine*
    David J. DeVine
    Sheldon H. Klein
    201 W. Big Beaver, Suite 1200
    Troy, MI 48084
    Tel: 248-258-1616
    devine@butzel.com
    klein@butzel.com

    *Attorneys for Defendant Greater Metropolitan Association of REALTORS®*

WEINGARDEN LAW, PLLC

By: *s/ Harvey R. Weingarden*
    Harvey R. Weingarden (P31534)
    370 E. Maple Rd., Third Floor
    Birmingham MI 48009
    Tel: 248-723-1650
    hweingardenlaw@gmail.com

    *Co-Counsel for Defendant Realcomp II, Ltd.*

LIPPITT O'KEEFE PLLC

By: *s/ Brian O'Keefe*
    Brian O'Keefe (P39603)
    Alexander E. Blum (P74070)
    370 East Maple Road, Third Floor
    Birmingham, MI 48009
    Tel: 248-609-3526
    bokeefe@lippittokeefe.com
    ablum@lippittokeefe.com

    *Co-Counsel for Defendant Realcomp II Ltd.*

FRASER TREBILCOCK ET. AL. P.C.

By: *s/ Jared A. Roberts*
    Jared A. Roberts (P55182)
    124 W. Allegan St., Suite 1000
    Lansing, MI 48933
    Tel: 517-482-5800
    jroberts@fraserlawfirm.com

    *Attorney for Defendant Grosse Point Board of REALTORS®*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DOUGLAS H. HARDY, M.D.,
GLENN CHAMPION, ESQ., DYLAN
TENT, ET AL., As representatives of a
class of real estate brokers and agents,

                Plaintiffs,

v.

NATIONAL ASSOCIATION OF
REALTORS, MICHIGAN
ASSOCIATION OF REALTORS, THE
GROSSE POINTE BOARD OF
REALTORS, GREATER
METROPOLITAN ASSOCIATION
OF REALTORS, NORTH OAKLAND
COUNTY BOARD OF REALTORS,
AND REALCOMP II LTD.,

                Defendants.

Case No. 2:24-cv-12102-JJCG-DRG

Hon. Jonathan J.C. Grey

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED
COMPLAINT FOR FAILURE TO
STATE A CLAIM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

ISSUES PRESENTED ........................................................................ vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................................. viii

I.      INTRODUCTION .................................................................1

II.     SUMMARY OF ALLEGATIONS .................................................3

III.    ARGUMENT .................................................................5

        A.   PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM .................................6

        1. Plaintiffs' Failure to Adequately Allege Relevant Product or Geographic Markets Is Fatal to Their Antitrust Claims .................................................................6

        2. Plaintiffs Have Not Alleged Antitrust Injury and Therefore Lack Antitrust Standing.. .................................................................11

        3. Plaintiffs Have Not Stated a Tying Claim Because They Have Not Pled that Defendants Have Unreasonably Restrained Trade in the Market for the "Tied" Product .................................................................15

        4. Plaintiffs' Amorphous Allegations Involving the *Sitzer/Burnett* Class Action Settlement Do Not Save Their Claims .................................................18

        5. Plaintiffs' Amended Complaint Does Not Adequately Allege Each Defendant's Role in the Alleged Conspiracy Sufficient to State a Claim Under Section 1 .................19

        6. Plaintiffs' Michigan Antitrust Reform Act Claim Fails for the Same Reasons as Their Federal Claims .................................................................22

        B.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY .................22

        1. Plaintiffs' Civil Conspiracy Claims Must Be Dismissed for the Same Reason Plaintiffs' Section 1 Claim Fails—Failure to Allege Concerted Action .................23

        2. Plaintiffs' Civil Conspiracy Claim Must Be Dismissed Because Plaintiffs Fail to Plead an Underlying Tort .................................................................24

IV.     CONCLUSION .................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*,
  776 F.3d 321 (5th Cir. 2015) ..............................................................10

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*,
  486 N.W.2d 351 (Mich. Ct. App. 1992).............................................24

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
  670 N.W.2d 569 (Mich. Ct. App. 2003).............................................25

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd.
  Of Podiatric Surgery, Inc.*,
  323 F.3d 366 (6th Cir. 2003) .................................................................8

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)................................................................................7

*Bassett v. NCAA*,
  528 F.3d 426 (6th Cir. 2008) ...............................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................5, 6, 20, 22

*Bojicic v. DeWine*,
  569 F. Supp. 3d 669 (N.D. Ohio 2021) ...............................................21

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)...................................................................7, 9, 11, 13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)..............................................................................12

*Bryant v. McDonough*,
  72 F.4th 149 (6th Cir. 2023) ..................................................................5

*Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of REALTORS*,
  410 F. Supp. 2d 574 (E.D. Ky. 2006)......................................3, 16, 18

*Calabrese v. St. Mary's*,
   No. 06-cv-13908, 2007 U.S. Dist. LEXIS 10404 (E.D. Mich. Feb.
   15, 2007) ........................................................................................................8

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986)....................................................................................12

*Carson Real Est. Cos. V. CoStar Grp., Inc.*,
   No. 10-cv-13966, 2011 U.S. Dist. LEXIS 109177 (E.D. Mich. June
   30, 2011) .....................................................................................................25

*CBC Cos. v. Equifax Inc.*,
   561 F.3d 569 (6th Cir. 2009) ......................................................................13

*In re Crop Inputs Antitrust Litig.*,
   No. 21-md-2993, 2024 U.S. Dist. LEXIS 165675 (E.D. Mo. Sept.
   13, 2024) .....................................................................................................22

*CTUnify, Inc. v. Nortel Networks, Inc.*,
   115 F. App'x 831 (6th Cir. 2004) ..........................................................13, 16

*Cupp v. Alberto-Culver USA, Inc.*,
   310 F. Supp. 2d 963 (W.D. Tenn. 2004) .......................................................9

*Detroit Will Breathe v. City of Detroit*,
   524 F. Supp. 3d 704 (E.D. Mich. 2021) ................................................24, 25

*DXS, Inc. v. Siemens Med. Sys.*,
   991 F. Supp. 859 (E.D. Mich. 1997) ...........................................................23

*Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*,
   No. 13-cv-14241, 2014 U.S. Dist. LEXIS 154736 (E.D. Mich. Oct.
   31, 2014), *aff'd*, 833 F.3d 680 (6th Cir. 2016) .............................................23

*Ezzo's Invs., Inc. v. Aveda Corp.*,
   No. 99-cv-6489, 2000 U.S. App. LEXIS 33867 (6th Cir. Dec. 19,
   2000) ......................................................................................................12, 20

*Findling v. Realcomp II, Ltd.*,
   No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082 (E.D. Mich. Mar.
   22, 2018). ..............................................................................13, 14, 16, 17, 18

iii

*Found. For Interior Design Educ. Rsch. V. Savannah Coll. of Art & Design*,
  244 F.3d 521 (6th Cir. 2001) .................................................................. 8

*Found. For Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*,
  73 F. Supp. 2d 829 (W.D. Mich. 1999) ......................................... 8, 10

*FTC v. Ind. Fed'n of Dentists*,
  476 U.S. 447 (1986) ................................................................................ 17

*Gamrat v. Allard*,
  320 F. Supp. 3d 927 (W.D. Mich. 2018) ............................................ 24

*Gene Cope & Assocs., Inc. v. Aura Promotions, Ltd.*,
  692 F. Supp. 724 (E.D. Mich. 1988) ................................................... 12

*HPIL Holding, Inc. v. Zhang*,
  No. 23-cv-12050, 2024 U.S. Dist. LEXIS 91024 (E.D. Mich. May
  21, 2024) . Civil ..................................................................................... 24

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006) .................................................................................. 15

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) .................................................................................... 16

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
  588 F.3d 908 (6th Cir. 2009) .............................................................. 7, 8

*Mathirealas v. Daily News, L.P.*,
  152 F. Supp. 2d 465 (S.D.N.Y. 2001) ................................................ 11

*Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
  458 F. Supp. 2d 474 (E.D. Mich. 2006) ........................... 9, 11, 15, 22

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) ................................................................ 12

*Pope v. Miss. Real Est. Comm'n*,
  695 F. Supp. 253 (N.D. Miss. 1988) ................................................... 18

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 09-md-2042, 2012 U.S. Dist. LEXIS 80269 (E.D. Mich. June
  11, 2012) ......................................................................................22

*Southaven Land Co. v. Malone & Hyde, Inc.*,
  715 F.2d 1079 (6th Cir. 1983) ..........................................................14

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross Blue Shield,
  Inc.*,
  552 F.3d 430 (6th Cir. 2008) ...........................................6, 7, 11, 21, 22

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ............................................................21

*United States v. Associated Press*,
  326 U.S. 1 (1945)............................................................................17

*United States v. E. I. Du Pont de Nemours & Co.*,
  351 U.S. 377 (1956).........................................................................15

*United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*,
  No. 22-cv-10228, 2024 U.S. Dist. LEXIS 58505 (E.D. Mich. Mar.
  29, 2024) .......................................................................................8

*Venture Res. Grp. v. Greater N.J. Reg'l Multiple Listing Serv.*,
  No. 95-cv-0401, 1995 U.S. Dist. LEXIS 21177 (D.N.J. Aug. 23,
  1995) ...........................................................................................18

*Wee Care Child Ctr., Inc. v. Lumpkin*,
  680 F.3d 841 (6th Cir. 2012) .............................................................7

*Worldwide Basketball & Sport Tours, Inc. v. NCAA*,
  388 F.3d 955 (6th Cir. 2004) ...........................................................12

*Young v. Lehigh Corp.*,
  No. 80-cv-4376, 1989 U.S. Dist. LEXIS 11575 (N.D. Ill. Sept. 18,
  1989) ...........................................................................................16

**Statutes**

Federal Rules of Civil Procedure Rule 8 .................................................24

Federal Rules of Civil Procedure Rule 12(b)(6).........................................3, 5, 8, 10

Mich. Comp. Laws § 445.784(2) (1984) .................................................................23

Michigan Antitrust Reform Act ..................................................................6, 16, 23

Sherman Act § 1 .........................................................................6, 7, 8, 17, 20, 24

Sherman Act § 2 ...........................................................................6, 7, 8, 10

**ISSUES PRESENTED**

Should this Court dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure?

Specifically:

1.   Have Plaintiffs stated a claim for an antitrust violation under either Sections 1 or 2 of the Sherman Act, or under the Michigan Antitrust Reform Act?

   Defendants say "No."

   Plaintiffs say "Yes."

2.   Have Plaintiffs stated a claim for civil conspiracy?

   Defendants say "No."

   Plaintiffs say "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Pursuant to LR 7.1(d)(2), Defendants submit that the following are the controlling or most appropriate authority for the relief sought:

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*CBC Cos. v. Equifax Inc.*, 561 F.3d 569 (6th Cir. 2009)

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007)

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)

*Findling v. Realcomp II Ltd.*, No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082 (E.D. Mich. Mar. 22, 2018)

*Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474 (E.D. Mich. 2006)

# I.     INTRODUCTION

Realcomp collates data submitted by real estate licensees to provide a multiple listing service ("MLS") with information about real estate listings, sales and related matters.  To list properties on Realcomp's MLS, a real estate licensee must be a REALTOR® (that is, a member of real estate trade associations, the National Association of REALTORS®, the Michigan Association of REALTORS®, and one or more local REALTOR® organizations—some of which are Defendants in this action).[1]  Plaintiffs take issue with being REALTORS®, including as members of Realcomp's alleged shareholder associations.  Specifically, Plaintiffs challenge the requirement of association membership to access Realcomp's MLS—but would like to retain the full benefits that Realcomp's MLS provides to those members.

Plaintiffs filed their First Amended Complaint ("FAC") in an attempt to remedy the pleading deficiencies identified in Defendants' initial motion to dismiss. As set forth below, the FAC fails to remedy these pleading failures and is equally subject to dismissal.  The necessary elements of their antitrust claims are either absent or plead in only a conclusory manner.  For instance, Plaintiffs make vague references to the "real estate market" but have not properly alleged facts defining such market, nor have they shown how the alleged conduct has impacted

---

[1] REALTOR® is a registered trademark of the National Association of REALTORS®.

competition in a properly defined market.  Plaintiffs have now made explicit that they intend to bring a tying claim, but the FAC does no more to make out such a claim than did the original complaint.  Tellingly, the FAC still does not allege that Defendants' conduct has harmed competition.

Plaintiffs' FAC is also an improper and untimely collateral attack on the settlement by the National Association of REALTORS® of unrelated class action litigation ("*Sitzer/Burnett*") filed by home sellers.  Plaintiffs allege that the settlement, approved by the Western District of Missouri on November 27, 2024, eliminates "guaranteed broker commission" for buyer brokers that a listing broker could previously communicate on an MLS.  FAC, ECF No. 27, at PageID.404, ¶ 47.  According to Plaintiffs, these changes have "diminished any value created by the compulsory membership requirement."  *Id.* at PageID. 404, ¶ 49.  These allegations highlight fundamental issues in Plaintiffs' FAC:  first, that the MLS is "essential" but no longer has a "purpose;" and second, that Plaintiffs prefer the practices that the jury in *Sitzer/Burnett* found to be anticompetitive and assert that the *changes* made to remedy the *Sitzer/Burnett* findings are themselves anticompetitive.

The FAC fails for the same reasons as the initial Complaint—Plaintiffs have not identified facts sufficient to support either their antitrust or their conspiracy claims.  The FAC should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    SUMMARY OF ALLEGATIONS

Plaintiffs bring purported class action claims against Defendants the National Association of REALTORS® ("NAR"), Michigan Association of REALTORS® ("MAR"), The Grosse Pointe Board of REALTORS® ("Grosse Pointe Board"), Greater Metropolitan Association of REALTORS® ("GMAR"), North Oakland County Board of REALTORS® ("NOCBOR"), and Realcomp II Ltd. ("Realcomp") (together "Defendants").  Plaintiffs filed their FAC on November 21, 2024, (FAC, ECF No. 27, at PageID.394), in response to Defendants' initial Motion to Dismiss. Motion to Dismiss, ECF No. 22, at PageID.78, and FAC, at PageID.394.

Plaintiffs allege that Realcomp is "a software company that manages the MLS."  FAC, at PageID.395, p.2.  Plaintiffs also allege that the Realcomp-managed version of the MLS includes a real "property's history, tax information, past sales information, assessments, valuation, size, acreage, sales data and several other important statistics . . . ."  *Id.* at PageID.397 and 405, ¶¶ 6 and 57; *id.* at PageID.402, ¶ 36.  MLSs have been described as "a computerized database of homes for sale" in a given area.  *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of REALTORS*, 410 F. Supp. 2d 574, 576 (E.D. Ky. 2006), *aff'd*, 198 F. App'x 485 (6th Cir. 2006). Plaintiffs incorrectly allege that "[t]he local boards, such as GBOR, GMAR and NOCBOR, et al., are the sole owners of REALCOMP II and control the membership and use of the MLS."  FAC at Page ID.402-03, ¶ 38.

3

Plaintiffs allege that membership in the associations is required to access the Realcomp MLS, *see id.* at PageID.403, ¶ 40 (Plaintiffs "are all compulsory members of the Defendant organizations"), but also acknowledge that NAR does not mandate that MLS providers require their participants to be members of a REALTOR® association. *Id.* at PageID.402–03, ¶¶ 37 and 43.  However, as discussed below (p. 15), not all real estate licensees are REALTORS®.

According to Plaintiffs, they lost what they characterize as the "guarantee of commission pursuant to the Broker Fee component of the MLS" because NAR agreed, as part of a settlement of unrelated litigation brought by a class of home sellers, to change its policies and remove from MLSs the publication of compensation offered by listing brokers (who list and sell homes) to buyer brokers for bringing potential buyers (i.e., "offers of compensation"). *Id.* at PageID.403–04, ¶¶ 46–51.  The unrelated litigation is *Sitzer v. The Nat'l Ass'n of REALTORS®* ("*Sitzer/Burnett*"), No. 19-cv-00332-SRB (W.D. Mo., Apr. 19, 2024).  ECF No. 1458, Ex. 1 ("Settlement" as referenced in the FAC).  The *Sitzer/Burnett* court granted final approval of the Settlement on November 27, 2024.  Order Granting Motion for Final Approval, *Sitzer/Burnett*, (W.D. Mo. Nov. 27, 2024), ECF No. 1622 ("*Sitzer/Burnett* Final Approval Order").   As the *Sitzer/Burnett* Court described, the Settlement "include[s] meaningful changes to [NAR's] policies, including removal of offers of compensation on the MLS." *Id*. at 10.  While

4

Defendants disagree with the jury verdict in *Sitzer/Burnett*, the "meaningful change" Plaintiffs take issue with is specific conduct found by the jury to be anticompetitive in *Sitzer/Burnett*—offers of compensation *on* the MLS.

Plaintiffs allege that removal of the offers of compensation "truly eliminated the sole purpose of the NAR and MAR sponsored MLS systems by eliminating the guarantee of compensation between brokers."  FAC at PageID.404, ¶ 50.

Additional allegations are described in the Argument section in the context of the legal failings to which they relate.

## III.   ARGUMENT

"A complaint will be dismissed under Rule 12(b)(6) if it does not plead facts, accepted as true and viewed in the light most favorable to the plaintiff, that state a plausible claim to relief."  *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023). Under *Twombly*, there must be "specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 570 (2007) (holding that an antitrust complaint must be dismissed for failing to "state a claim to relief that is plausible on its face").  And "[a]lthough a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions."  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross Blue Shield, Inc.*, 552 F.3d 430, 434 (6th Cir. 2008).

### A.      PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM

Plaintiffs' antitrust claims—Count I (Michigan Antitrust Reform Act), Count II (Sherman Act § 1), and Count III (Sherman Act § 2)—must be dismissed because Plaintiffs fail to plead facts sufficient to establish the necessary elements for each claim.  The factual allegations Plaintiffs do include are vague, conclusory, and lack plausible facts necessary to state an antitrust claim.

*First*, Plaintiffs fail to allege plausible facts adequately supporting any of their vague and conclusory references to a "relevant market."  *Second*, Plaintiffs fail to meet the threshold inquiry of antitrust injury necessary to establish antitrust standing.  *Third*, Plaintiffs have not established anticompetitive tying.  *Fourth*, Plaintiffs' FAC suffers from a group pleading defect rendering Plaintiffs' conspiracy allegations deficient.

#### 1. Plaintiffs' Failure to Adequately Allege Relevant Product or Geographic Markets Is Fatal to Their Antitrust Claims

The purpose of the antitrust laws is to protect competition.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 847–48 (6th Cir. 2012) (noting that protecting competition is the "*sine qua non* of the antitrust laws").  Toward that end, Section 1 of the Sherman Act addresses "concerted action" (*i.e.*, an agreement) that harms competition and Section 2 addresses exclusionary conduct by a monopolist.

Both claims necessarily start with the definition of the "relevant market" in

which competition has allegedly been harmed.  This is because it is impossible to assess whether conduct harms competition without knowing the market in which competition occurs.  *Total Benefits*, 552 F.3d at 437 ("The Supreme Court requires plaintiffs to identify the relevant product and geographic markets so the district court can assess 'what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market.'" (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962))).  Thus, relevant markets necessarily have product and geographic dimensions.  *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 916–18 (6th Cir. 2009).

Both Section 1 and 2 also require that plaintiffs plead that defendants have the power to harm competition in the relevant market.  This means that for the Sherman Act § 1 claim at issue here, defendants must have "*market* power or capacity to have an effect on competition."  *Calabrese v. St. Mary's*, No. 06-cv-13908, 2007 U.S. Dist. LEXIS 10404, at *9–10 (E.D. Mich. Feb. 15, 2007) (emphasis added) (dismissing Section 1 claim for failure to plead a relevant market).  To make out a Sherman Act § 2 claim, the greater showing of monopoly power, rather than market power, is required.  *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Of Podiatric Surgery, Inc.*, 323 F.3d 366, 370 (6th Cir. 2003); *United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, No. 22-cv-10228, 2024 U.S. Dist. LEXIS 58505, at *9 (E.D. Mich. Mar. 29, 2024) ("If the alleged monopolist does

7

not possess enough potential power in the relevant market to harm competition, a Section 2 claim cannot be made out.").

"Market power must be alleged in more than vague and conclusory terms to prevent the dismissal of the complaint on a defendant's Rule 12(b)(6) motion." *Found. For Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 73 F. Supp. 2d 829, 837 (W.D. Mich. 1999) (internal quotation omitted). A complaint that fails to sufficiently plead market power (or monopoly power) in a properly defined antitrust market should be dismissed. *Ky. Speedway*, 588 F.3d at 916; *Found. For Interior Design Educ. Rsch. V. Savannah Coll. of Art & Design*, 244 F.3d 521, 530–31 (6th Cir. 2001) (affirming dismissal of antitrust claims for failure to sufficiently allege market power in the relevant market).

**Plaintiffs' vague and conclusory "product market" allegations are insufficient to state a claim.** The U.S. Supreme Court has advised that "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe*, 370 U.S. at 325. Plaintiffs' conclusory market definition allegations fail to explain which products are interchangeable with any of the referenced markets. This alone is grounds for dismissal of their claims. *See, e.g.*, *Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 483 (E.D. Mich. 2006) (rejecting alleged market as too narrow where the

market "clearly d[id] not encompass all interchangeable substitute products"); *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 970, 972 (W.D. Tenn. 2004) (rejecting "insufficient and fatally vague" attempted product market definition and explaining that, "[w]hen the complaint gives such a deficient proposal for a relevant market, it fails to state a civil antitrust complaint, and the Court may dismiss the case on that ground alone").

Plaintiffs seem to allege that the product market is "[t]he real estate market." *E.g.*, FAC at Page.IDs 397, 399, 405, 406, ¶¶ 5, 18, 56, 64, 65. Plaintiffs do not describe the contours of this market but allege that the "real estate market" is the market in which the *Plaintiffs* do business—suggesting that the "real estate market" involves the market in which homes are bought and sold. *Id*. at Page.ID 399, ¶ 21 (describing Plaintiffs as "brokers and agents who conduct business in the real estate market"). Plaintiffs to do not allege facts suggesting that *Defendants*—organizations that Plaintiffs do not allege purchase or sell homes—compete in the "real estate market." *See Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 335 (5th Cir. 2015) (holding that a Section 2 claim failed as a matter of law because defendant did not compete in the relevant market). Nor do Plaintiffs have any plausible allegations about market power in *any* product market. To the extent Plaintiffs suggest that all real estate brokers and salespersons in Michigan are "REALTORS®", they are not. Plaintiffs also allege that Realcomp has 16,000

members in southeast Michigan.  FAC, at PageID.406, ¶ 63.  But this is meaningless as a standalone metric and, in any event, does not show how Realcomp (or any other Defendant) has market power over "the real estate market."  *Found. For Interior Design Educ.*, 73 F. Supp. 2d at 837 ("Market power must be alleged in more than vague and conclusory terms to prevent the dismissal of the complaint on a defendant's Rule 12(b)(6) motion." (internal quotation omitted)).

> ***Plaintiffs' "geographic market" allegations are insufficient to state a claim.***

Plaintiffs also fail to allege the relevant geographic market, let alone facts plausibly supporting such an allegation.   Plaintiffs refer indiscriminately to "Southeast Michigan," and "Michigan."  FAC at PageID.400, 410, ¶ 27, ¶ 84.  But Plaintiffs' do not define "Southeast Michigan," let alone plead facts supporting an allegation that there is a "Southeast Michigan real estate market" that both corresponds to "the commercial realities of the industry and [is] economically significant."  *Michigan Division-Monument Builders*, 458 F. Supp. 2d 474, 480 (citing *Brown Shoe*, 370 U.S. at 336-37).  Those allegations must allow the Court to "assess 'what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market.'"  *Total Benefits*, 552 F.3d at 437 (quoting *Brown Shoe*, 370 U.S. at 324).  Nor have Plaintiffs pled how Defendants' alleged conduct is economically significant with respect to either stated vaguely identified geographic area.  *See Mathirealas v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001)

(dismissing Sherman Act claims where plaintiffs' "allegations that resemble[d] a geographic market discussion [were] contradictory"). The *Mathirealas* plaintiffs failed to plead "a geographic market with precision" and made it "impossible to assess the potential harm to competition" from defendants' alleged misconduct. *Id.*

*Plaintiffs' deficient relevant market allegations require dismissal.* Where, as here, Plaintiffs plainly fail to allege a relevant market, Plaintiffs' antitrust claims under Section 1 and Section 2 must be dismissed. *See, e.g.*, *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 962 (6th Cir. 2004) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim."); *Ezzo's Invs., Inc. v. Aveda Corp.*, No. 99-cv-6489, 2000 U.S. App. LEXIS 33867, at *11 (6th Cir. Dec. 19, 2000) (affirming dismissal for "failure to allege the relevant product and geographic market affected by Defendants' actions"); *Gene Cope & Assocs., Inc. v. Aura Promotions, Ltd.*, 692 F. Supp. 724, 729 (E.D. Mich. 1988) ("Without an adequate relevant market definition, the share a company has in a market cannot be ascertained. Therefore, the Court cannot determine if Aura had monopoly power in the relevant market.").

### 2. Plaintiffs Have Not Alleged Antitrust Injury and Therefore Lack Antitrust Standing

Plaintiffs' claims also fail because they have not adequately pled antitrust standing, which is a threshold pleading-stage inquiry. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450–51 (6th Cir. 2007). An essential element of antitrust standing is

11

"antitrust injury," that is, injury "of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 & n.5 (1986) (noting that antitrust injury is a "necessary, but not always sufficient, element of antitrust standing").

To establish antitrust injury, a plaintiff must plausibly allege that the defendants' conduct caused a market-wide injury that harmed competition.  *See Brown Shoe*, 370 U.S. at 320; *CBC Cos. v. Equifax Inc.*, 561 F.3d 569, 572–73 (6th Cir. 2009) (affirming dismissal of a complaint where "the facts alleged in [plaintiff's] complaint suggest that [plaintiff's] fundamental frustration [was] with . . . price terms . . . , rather than specific anticompetitive behavior"); *CTUnify, Inc. v. Nortel Networks, Inc.*, 115 F. App'x 831, 834 (6th Cir. 2004).

Plaintiffs allege in conclusory terms that they have antitrust standing because "they have suffered anti-trust injury and are appropriate parties to enforce the antitrust laws as they are brokers and agents who conduct business in the real estate market."  FAC, at PageID.399, ¶ 21.  Legal conclusions aside, Plaintiffs fail to sufficiently plead that the membership requirements caused harm to competition.

Plaintiffs' failure to adequately define a relevant market establishes that they have not alleged antitrust injury because "failure to allege an anti-competitive impact

12

on a relevant market amounts to a failure to allege an antitrust injury." *Bassett v. NCAA*, 528 F.3d 426, 431 (6th Cir. 2008) (affirming dismissal of antitrust claims where complaint contained no allegations of the effect of defendants' enforcement of rules on the relevant market).

In *Findling v. Realcomp II, Ltd.*, an individual who was not a member of a REALTOR® association argued that he had a right under the antitrust laws to use Realcomp's MLS. No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082, at *2–3 (E.D. Mich. Mar. 22, 2018). The *Findling* Court held that "Plaintiff fails to allege any facts about the real estate advertising market or who the major real estate advertising competitors may be." *Id*. at *6. There, the plaintiff's failure to sufficiently allege a relevant market prevented the court from being able to reasonably infer a market-wide injury. *Id.* Just as in *Findling*, the Court cannot reasonably draw inferences about harm to competition across a market that has not been adequately identified. *See Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085–87 (6th Cir. 1983) (cited in *Findling*, 2018 U.S. Dist. LEXIS 47082, at *5) (affirming dismissal for lack of antitrust standing).

Plaintiffs make conclusory statements that "information contained in the MLS . . . is not available from any other source," that Realcomp is "unique," and "there is no other alternative available to Plaintiffs which contain the same or substantially similar information." FAC, at PageID.396; *id*. at PageIDs.397, 399,

¶¶ 8, 20. These assertions are implausible on the face of the FAC and are contradicted by Plaintiffs' other allegations. *See id.* at PageID.397, ¶ 6 (describing publicly available information that is reproduced on the MLS—"property history," "tax information," "past sales," "assessments," information about "size" and "acreage"); *id.* at PageID.406, ¶ 63 (alleging that Realcomp's membership includes "half of all licensed brokers and agents in the State of Michigan" but failing to allege how the other half does business without access to Realcomp's "essential" data). In other words, as Plaintiffs' allegations make clear, publicly available information on the MLS can be accessed without being a member of any Defendant organization. In addition, based on their allegations that (1) only half of Michigan's brokers and agents are Realcomp members, and (2) one must be a member of a REALTOR® association to be a Realcomp member, Plaintiffs concede that there are thousands of real estate licensees who are not members of a REALTOR® association and who conduct their real estate business without the use of Realcomp and its services. FAC, at PageID.406, ¶ 63.

Even taking as true Plaintiffs' implausible allegation that Realcomp is the only source of information available to Plaintiffs, Plaintiffs have not plausibly pleaded that Defendants' alleged conduct has impacted competition. *United States v. E. I. Du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) ("Monopoly power is the power to control prices or exclude competition."); *cf. Michigan Division-Monument*

*Builders*, 458 F. Supp. 2d at 484 (holding that tying claim failed as a matter of law because "presumptions" about "uniqueness . . . cannot support a valid antitrust claim" (citing *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006))).

Finally, as discussed above, Plaintiffs' claims fail because they show neither antitrust injury, nor exclusionary conduct, in the market for the tied product—association membership.

### 3. Plaintiffs Have Not Stated a Tying Claim Because They Have Not Pled that Defendants Have Unreasonably Restrained Trade in the Market for the "Tied" Product

Plaintiffs seek to bring "tying" claims under the Michigan Antitrust Reform Act as well as under Sections 1 and 2 of the Sherman Act.  Plaintiffs' tying claims fail because they have not alleged anticompetitive effects on the tied product—association membership—as a result of the alleged agreement.  *CTUnify*, 115 F. App'x at 836 (dismissing tying claim).  Specifically, Plaintiffs have not alleged an antitrust claim because they have not alleged that Defendants' conduct foreclosed sales (and therefore harmed competition) in the market for the tied product—association membership.  *Findling*, 2018 U.S. Dist. LEXIS 47082, at *6–9 (citing *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16 (1984) (holding that even if "a single purchaser were 'forced' with respect to the purchase of a tied item" that "would not be sufficient to warrant the concern of antitrust law")); *see also Buyer's Corner*, 410 F. Supp. 2d 574, 580 (E.D. Ky. 2006) (finding that plaintiffs lacked

antitrust standing as a matter of law because being "forced" to purchase membership in a local REALTOR® association did "not constitute 'antitrust injury'"); *Young v. Lehigh Corp.*, No. 80-cv-4376, 1989 U.S. Dist. LEXIS 11575, at *47–48 (N.D. Ill. Sept. 18, 1989) (holding that plaintiff lacked standing when "plaintiff may have suffered an 'injury' in paying for club membership that he did not need or want," but did not plausibly allege how "competition in the country-club market" was adversely affected).

Plaintiffs allege that "Defendants' mandatory membership requirements create a tying arrangement." FAC, at PageID.398, ¶ 15. It is a "widely recognized" principle "that private organizations may reasonably tie their benefits and services to membership." *Findling*, 2018 U.S. Dist. LEXIS 47082, at *10–11 (citing *United States v. Associated Press*, 326 U.S. 1, 21-23 (1945)).

Plaintiffs' antitrust counts are based on the allegation that membership in Defendants' organizations is "compulsory" "in order to access the MLS." FAC at PageID.397, ¶ 3. Plaintiffs are eligible for membership and its benefits but insist that the antitrust laws entitle them to retain their access to Realcomp's MLS without paying in full what is required to access MLS services. *Id*. at PageID.398, ¶ 13 ("Plaintiffs do not seek to be allowed access to the MLS information *gratis*, rather, they seek to be able to access the information without the necessity of belonging to at least three organizations . . . ."). The *Findling* court recognized that, at bottom,

plaintiff "alleged only that Realcomp is a voluntary trade association with membership benefits," and "[o]ne of its benefits is access to the MLS." 2018 U.S. Dist. LEXIS 47082, at *10. It then held "[t]his, without more, is not a § 1 violation." *Id.* (citing *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458–59 (1986)).

Like in *Findling*, Plaintiffs' allegations "fail to show that defendants are unreasonably or discriminatorily restricting access to the MLS," nor do Plaintiffs plausibly allege "that the license and dues requirements are unreasonable." *Id.* at *11. And here, Plaintiffs are in an even weaker position than the plaintiff in *Findling*, who was not eligible for association membership and therefore could not access the MLS. *Id.* at *13. There are no such restrictions on Plaintiffs here.

The court in *Findling* recognized a "nationwide consensus" that MLS providers do not commit Sherman Act violations "when they restrict access to member brokers who have paid reasonable fees." *Id.* at *12; *see also Venture Res. Grp. v. Greater N.J. Reg'l Multiple Listing Serv.*, No. 95-cv-0401, 1995 U.S. Dist. LEXIS 21177, at *8 (D.N.J. Aug. 23, 1995) ("Numerous federal and state courts have declined to hold that an antitrust violation is present where a multiple listing service merely conditions access to the multiple listing service upon membership in a board of REALTORS®."); *Pope v. Miss. Real Est. Comm'n*, 695 F. Supp. 253, 269 (N.D. Miss. 1988) (holding that defendants did not violate the Sherman Act by requiring REALTOR® association membership as a condition of MLS access);

17

*Buyer's Corner*, 410 F. Supp. 2d at 580 (holding that there was no harm to competition when a REALTOR® Association required membership as a condition of MLS access). Here, Plaintiffs dislike the requirements for MLS access. But their desire to pick and choose what is required to access Realcomp's services (*i.e.*, the same service that Plaintiffs allege no longer has a "purpose")) is insufficient to state an antitrust claim.

### 4. Plaintiffs' Amorphous Allegations Involving the *Sitzer/Burnett* Class Action Settlement Do Not Save Their Claims

Plaintiffs take issue with the removal of offers of compensation (by listing brokers to would-be buyer's brokers) from MLSs and want to resurrect this practice. FAC at PageID.403-04. The removal of this information from Realcomp (and other MLSs), however, was a practice change NAR agreed to as part of the class action Settlement to resolve antitrust litigation and was finally approved by the *Sitzer/Burnett* court on November 27, 2024. *Supra* pp. 4-5.

It is difficult to ascertain the import of Plaintiffs' allegations about the Settlement to their claims. Plaintiffs allege that the practice change injured them by "greatly diminish[ing] any value" in their memberships in Defendants' organizations, because the change "truly eliminated the sole purpose of the NAR and MAR sponsored MLS systems by eliminating the guarantee of compensation between brokers," and that the Settlement has led or will also lead to an assortment of other alleged harms. *Id.* at PageID.404, ¶¶ 47–50.

These allegations are inconsistent and facially implausible. On one hand, Plaintiffs allege that the MLS is so "essential" that they cannot do business without it. *Id*. at PageIDs.399, 413, ¶¶ 17, 113. On the other, they allege that "remov[ing] the guaranteed broker commission from the MLS," eliminated the "*sole purpose* of the . . . MLS systems." *Id*. at PageID.404, ¶¶ 47, 50 (emphasis added). Plaintiffs can't have it both ways, and as a result, their FAC must fail.

Furthermore, if Plaintiffs mean for these allegations to somehow form the basis of an antitrust claim, which is not apparent from the face of the FAC, the claim should be dismissed because it is an inappropriate collateral attack on the Settlement. The *Sitzer/Burnett* court retains continuing and exclusive jurisdiction over the Settlement. *Sitzer/Burnett* Final Approval Order ¶ 191.

### 5. Plaintiffs' Amended Complaint Does Not Adequately Allege Each Defendant's Role in the Alleged Conspiracy Sufficient to State a Claim Under Section 1

Plaintiffs fail to sufficiently plead the existence of an agreement or conspiracy, which is required to state a claim under Section 1 of the Sherman Act. *Twombly*, 550 U.S. at 556 (a Section 1 plaintiff must provide "enough factual matter . . . to suggest that an agreement was made"); *Ezzo's Invs., Inc. v. Aveda Corp.*, No. 99-6489, 2000 U.S. App. LEXIS 33867, at *7–8 (6th Cir. Dec. 19, 2000) (affirming dismissal of Section 1 conspiracy claims where amended complaint failed to put

forth any facts that would suggest co-conspirators communicated about the alleged agreement).

Plaintiffs rely on the allegation that access to Realcomp is contingent upon membership in national, state, and local associations.  FAC, PageID. 398–99, ¶¶ 9, 17.  But Plaintiffs fail to allege any specifics of this purported "agreement," rendering the FAC insufficient.  *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (affirming dismissal of Section 1 claims where plaintiffs "attempt[ed] to implicate the[] defendants in the purported conspiracy by relying on several vague allegations . . . that refer[red] to 'defendants' or 'defendants' executives'" which were "precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*"); *Total Benefits*, 552 F.3d at 436–37 (affirming dismissal of antitrust case where plaintiffs' generically pleaded conspiracy lacked specific reference to the "who, what, where, when, how, or why" and did "not supply facts adequate to show illegality"); *see also Bojicic v. DeWine*, 569 F. Supp. 3d 669, 680 (N.D. Ohio 2021) ("Plaintiffs incorporate a variety of legal buzzwords in their complaint but do not back them up with specific facts.").

For instance, Plaintiffs allege that Defendants "coordinate membership policies and fee structures which benefit each of them financially."  FAC at PageID.407, ¶ 69.  But Plaintiffs fail to allege facts supporting Defendants' "coordination," "fee structures," or how such "financial benefit" gives rise to the

conspiracy alleged.  *See In re Crop Inputs Antitrust Litig.*, No. 21-md-2993, 2024 U.S. Dist. LEXIS 165675, at *42 (E.D. Mo. Sept. 13, 2024) ("*Twombly* makes clear that at the pleading stage in an antitrust case, each defendant is entitled to know how it is alleged to have conspired, with whom, and for what purpose."); *In re Refrigerant Compressors Antitrust Litig.*, No. 09-md-2042, 2012 U.S. Dist. LEXIS 80269, at *32 (E.D. Mich. June 11, 2012) (characterizing vague allegations of a conspiracy that "reference 'Defendants' without specific factual allegations as to the numerous individual defendants named in this case" as "generic pleading" because "'alleging misconduct against defendants without specific[s] as to the role each played in the alleged conspiracy' is insufficient to allege an antitrust conspiracy claim" (quoting *Total Benefits*, 552 F.3d at 436)).  Indeed, Plaintiffs acknowledge that NAR does *not* have mandatory membership requirements for MLS access.  FAC at PageID.403, ¶ 43.  Because Plaintiffs fail to include the basic details of the alleged conspiracy, their conspiracy claim should be dismissed.  *See Total Benefits*, 552 F.3d at 436–37.

Nor can Plaintiffs establish a conspiracy by generally referring to "Defendants" throughout the FAC.  *See, e.g.*, FAC at PageID.397, ¶ 6 ("Defendants require"); *id.* at PageID.399, ¶ 18 ("Defendants' practice"); *id.* at PageID.406, ¶ 64 ("Defendants control . . . .").  *See Mich. Div. - Monument Builders*, 458 F. Supp. 2d at 485 ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to

21

apply to numerous parties without any specific allegations as to any individual . . .
defendant.").

### 6. Plaintiffs' Michigan Antitrust Reform Act Claim Fails for the Same Reasons as Their Federal Claims

The Michigan Antitrust Reform Act ("MARA") mirrors the Sherman Act, expressly follows federal precedent, and relies on federal case law: "[I]n construing all sections of [MARA], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes."   Mich. Comp. Laws § 445.784(2) (1984); *see also DXS, Inc. v. Siemens Med. Sys.*, 991 F. Supp. 859, 865 (E.D. Mich. 1997) ("Courts examining claims under [MARA] apply the same legal analysis as courts examining analogous claims under the Sherman Act.").   Thus, Plaintiffs' MARA claim should be dismissed for the same reasons its Sherman Act claims should be dismissed.  *See Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, No. 13-cv-14241, 2014 U.S. Dist. LEXIS 154736, at *19 (E.D. Mich. Oct. 31, 2014) (dismissing MARA claim based on Sherman Act analysis), *aff'd*, 833 F.3d 680 (6th Cir. 2016).

## B.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY

Plaintiffs' civil conspiracy claim fails because Plaintiffs do not plead concerted action or an underlying tort.

**1. Plaintiffs' Civil Conspiracy Claims Must Be Dismissed for the Same Reason Plaintiffs' Section 1 Claim Fails—Failure to Allege Concerted Action**

In Michigan, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992)).

Plaintiffs' civil conspiracy claims fail because, as discussed above, they do not allege the supposed mechanism through which the claimed conspiracy was enacted, let alone allege any details of the time, place, or purported effects of the conspiracy. *See HPIL Holding, Inc. v. Zhang*, No. 23-cv-12050, 2024 U.S. Dist. LEXIS 91024, at *28 (E.D. Mich. May 21, 2024) (dismissing civil conspiracy claim where plaintiff's factual allegations did not plausibly establish that the defendants "agreed or planned to do *anything*, let alone anything unlawful"). Civil conspiracy also cannot be maintained with generic allegations against all Defendants without specifying each Defendants' role. *See Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (dismissing civil conspiracy claim based on "group pleading," because "a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8" (citation omitted)).

### 2.  Plaintiffs' Civil Conspiracy Claim Must Be Dismissed Because Plaintiffs Fail to Plead an Underlying Tort

Plaintiffs' civil conspiracy claim must also be dismissed because a civil conspiracy claim must plead a separate actionable tort.  *See, e.g.*, *Detroit Will Breathe*, 524 F. Supp. 3d at 710–11 (dismissing counterclaims where counter-plaintiff "d[id] not allege that any plaintiff committed any underlying tort"); *Carson Real Est. Cos. V. CoStar Grp., Inc.*, No. 10-cv-13966, 2011 U.S. Dist. LEXIS 109177, at *15–17 (E.D. Mich. June 30, 2011) (dismissing claim of civil conspiracy where plaintiff failed to plead facts to support the underlying torts of extortion and unfair competition); *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (holding that plaintiffs failed to establish a claim of civil conspiracy because they had failed to establish the alleged underlying tort of tortious interference).

Here, Plaintiffs' civil conspiracy count does not even recite the legal elements required, nor does it attempt to connect those elements to the actions of any of the Defendants.  FAC, at PageID.414-16, ¶¶ 120–134.  Instead, the FAC rests its alleged conspiracy on vague reference to Defendants' alleged use of "their overwhelming economic power and market dominance."  *Id.*, at PageID.414, ¶ 123.  Neither allegation constitutes a specific underlying tort, and thus the claim must fail.

## IV.   CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed, in its entirety, with prejudice.

Dated:  January 15, 2025

MILLER CANFIELD PADDOCK &
STONE, P.L.C.

By:  s/ Larry J. Saylor
    Larry J. Saylor (P28165)
    Kimberly L. Scott (P69706)
    150 W. Jefferson Ave
    Suite 2500
    Detroit, MI 48226
    Tel: 313-963-6420
    saylor@millercanfield.com
    scott@millercanfield.com

    Attorneys for Defendants National
    Association of REALTORS® and
    Michigan Association of REALTORS®

LINNELL & ASSOCIATES PLLC

By:  s/ Richard D. Linnell
    Richard D. Linnell
    2804 Orchard Lake Road, Suite 203
    Keego Harbor, MI 48320
    Tel: 248-977-4182
    rlinnell@linnellfirm.com

    Attorneys for Defendant North Oakland
    County Board of REALTORS®

BUTZEL LONG

By:  s/ David J. DeVine
    David J. DeVine
    Sheldon H. Klein
    201 W. Big Beaver, Suite 1200
    Troy, MI 48084
    Tel: 248-258-1616
    devine@butzel.com
    klein@butzel.com

    Attorneys for Defendant Greater
    Metropolitan Association of
    REALTORS®

LIPPITT O'KEEFE PLLC

By:  s/ Brian O'Keefe
    Brian O'Keefe (P39603)
    Alexander E. Blum (P74070)
    370 East Maple Road, Third Floor
    Birmingham, MI 48009
    Tel: 248-609-3526
    bokeefe@lippittokeefe.com
    ablum@lippittokeefe.com

    Co-Counsel for Defendant Realcomp II,
    Ltd.

WEINGARDEN LAW, PLLC

By:   *s/ Harvey R. Weingarden*

     Harvey R. Weingarden (P31534)

     370 E. Maple Rd., Third Floor

     Birmingham MI 48009

     Tel: 248-723-1650

     hweingardenlaw@gmail.com

*Co-Counsel for Defendant Realcomp II, Ltd.*

FRASER TREBILCOCK ET. AL. P.C.

By:   *s/ Jared A. Roberts*

     Jared A. Roberts (P-55182)

     124 W. Allegan St., Suite 1000

     Lansing, MI 48933

     Tel: 517-482-5800

     jroberts@fraserlawfirm.com

*Attorney for Defendant Grosse Point Board of REALTORS®*

## CERTIFICATE OF SERVICE

I certify that on January 15, 2025, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which sends notification of such filing to all Attorneys of Record.

MILLER CANFIELD PADDOCK & STONE, P.L.C.

By: *s/ Larry J. Saylor*
        Larry J. Saylor (P28165)
        Kimberly L. Scott (P69706)
        150 W. Jefferson Ave
        Suite 2500
        Detroit, MI 48226
        Tel: 313-963-6420
        saylor@millercanfield.com
        scott@millercanfield.com

        *Attorneys for Defendants National Association of REALTORS® and Michigan Association of REALTORS®*