**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DOUGLAS H. HARDY, M.D.,
GLENN CHAMPION, ESQ.,
DYLAN TENT, ET AL., as
Representatives of a Class of Real
Estate Brokers and Agents,

        Plaintiffs,

v.

NATIONAL ASSOCIATION OF REALTORS®,
MICHIGAN ASSOCIATION OF REALTORS®,
THE GROSSE POINTE BOARD OF REALTORS®,
GREATER METROPOLITAN ASSOCIATION OF
REALTORS®, NORTH OAKLAND COUNTY
BOARD OF REALTORS® AND REALCOMP II,

        Defendants.
_____/

Case No. 2:24-cv-12102
Honorable Jonathan J.C. Grey

### <u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF No. 29)</u>

## I.   INTRODUCTION

On August 12, 2024, plaintiffs Douglas H. Hardy M.D., Glenn Champion, Esq., and Dylan Tent, as representatives of a class of real estate brokers and agents, filed a complaint against defendants National Association of Realtors ("NAR"), Michigan Association of Realtors ("MAR"), Grosse Pointe Board of Realtors ("GPBR"), Greater

Metropolitan Association of Realtors ("GMAR"), North Oakland County Board of Realtors ("NOCBR"), and RealComp II ("RealComp"). (ECF No. 1.) In that four-count complaint, plaintiffs alleged defendants: (1) restrained trade, in violation of the Michigan Antitrust Reform Act ("MARA") and the Sherman Antitrust Act ("Sherman Act") (15 U.S.C. §§ 1–38) (counts I and II, respectively); (2) engaged in civil conspiracy (count III); and (3) engaged in economic coercion (count IV). After defendants filed a motion to dismiss (ECF No. 22), plaintiffs filed their first amended complaint as a matter of right. (ECF No. 27.)

The first amended complaint also contains four counts. Plaintiffs again allege restraint of trade, in violation of MARA and the Sherman Act (15 U.S.C. § 1) (counts I and II, respectively), and civil conspiracy (now count IV). Plaintiffs added an "Anti-Trust Violations" (15 U.S.C. § 2) claim (count III), but they no longer allege an economic coercion claim. (*See* ECF No. 27.) Defendants filed a motion to dismiss the first amended complaint, and the parties fully briefed it. (*See* ECF Nos. 29, 30, 31.)[1] As

---

[1] Defendants filed two motions for leave to file notice of supplemental authority, each of which was accompanied by a notice regarding the same, and plaintiffs responded to each motion. (*See* ECF Nos. 32–37.) In addition, plaintiffs filed a motion for leave to file supplemental authority, to which defendants responded. (ECF Nos. 38–39.) In the interests of justice and a complete record, the Court **GRANTS** all three motions for leave to file supplemental authority. (ECF Nos. 32, 35, and 38.)

the parties have adequately briefed the motion, the Court considers it without oral argument. E.D. Mich. L.R. 7.1(f). For the following reasons, the Court **GRANTS** the motion to dismiss.

## II.   BACKGROUND

This proposed class action complaint challenges the requirement that all realtors, brokers and agents in the State of Michigan and nationally be members of the NAR, their state board of realtors such as MAR, and a local board of realtors such GPBR, GMAR, and NOCBR ("the local boards") to access the Multiple Listing Service ("MLS"). RealComp is a software company that manages the MLS and regulates its use by brokers and agents. Plaintiffs object to the compulsory membership in the NAR, MAR, and a local board to gain access to the MLS and the information it provides. Plaintiffs allege that defendants' pattern and practice constitutes a violation of the antitrust laws, an unfair restraint on trade, a monopoly, and a conspiracy.

## III.   LEGAL STANDARD

The Court may grant a motion to dismiss under Rule 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570

3

(2007)). When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

But the Court will not presume the truth of any legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the pleaded facts do not raise a right to relief, the Court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

"Pursuant to Federal Rule of Civil Procedure 12(c), after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Barber v. Charter Twp. of Springfield, Mich.*, 31 F.4th 382, 386 (6th Cir. 2022) (quoting Fed. R. Civ. P. 12(c)). In the Sixth Circuit, courts analyze Rule 12(c) motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)).

## IV.   ANALYSIS

"Plaintiffs challenge the mandatory membership requirements

4

imposed by the Defendants in these organizations to access information on the MLS." (ECF No. 30, PageID.475.) Plaintiffs allege that "information contained in the MLS . . . is not available from any other source," as RealComp is "unique," and "there is no other alternative available to Plaintiffs which contain the same or substantially similar information." (ECF No. 27, PageID.396–397, 399 at ¶¶ 8, 20.) Plaintiffs further allege that "to access the information maintained on the MLS, which includes the property's history, tax information, past sales information, assessments, valuation, size, acreage, sales data and several other important statistics, Defendants require membership in the national, state and local organizations." (*Id.* at ¶ 6.)

The Court finds plaintiffs' allegations of uniqueness and unavailability misleading and contradicted by reality. As defendants argue, and plaintiffs do not dispute, the "publicly available information on the MLS can be accessed without being a member of any Defendant organization." (ECF No. 29, PageID.451.) More significantly, for the reasons set forth below, the Court finds that, as to each of their four claims, plaintiffs have failed to plead a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 555, 570.

## A.     Sherman Act – Section 1 Claim

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy,[2] in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The Supreme Court has long recognized that Section 1 of the Sherman Act is intended to prohibit only unreasonable restraints of trade. *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988). "A 'restraint' is unlawful it if is 'unreasonable,'" *id.*, based on all of "the relevant circumstances." *Monsanto Co. v. Spray-rite Serv. Corp.*, 465 U.S. 752, 761 (1984).

Antitrust cases under Section 1 historically involve two modes of analysis depending on the nature of the claim: (1) anticompetitive conduct that is so manifest or great as to warrant the application of the per se rules of illegality; and (2) the rule of reason standard that "governs most allegations of restraints on trade." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) (quotation omitted); *see also United States v. Realty Multi–List, Inc.*, 629 F.2d 1351, 1358 (5th Cir. 1980)

---

[2] For purposes of this order, the Court assumes, without deciding, that plaintiffs have adequately pleaded that defendants have an agreement to mandate membership in their organizations to access the MLS.

6

(when deciding whether a local realtor board's requirements violate § 1, a court should use the rule of reason).

The parties agree that the Court should apply the rule of reason standard in this case to determine whether the alleged conduct violates Section 1 of the Sherman Act. *See Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. at 723–724; *see also Pope v. Mississippi Real Estate Comm'n*, 872 F.2d 127, 130 (5th Cir.1989) (citing *Realty Multi–List, Inc.*, 629 F.2d at 1361–1369); *O'Riordan v. Long Island Bd. of Realtors, Inc.*, 707 F. Supp. 111, 115 (E.D.N.Y.1988). Under the rule of reason standard, whether particular action violates Section 1 of the Sherman Act is determined on a case-by-case basis by weighing all of the circumstances of a case to decide whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition. *Business Elecs. Corp.*, 485 U.S. at 723.

Plaintiffs assert that defendants have violated Section 1 due to an alleged tying arrangement[3] that requires plaintiffs to be members of the

---

[3] A tying arrangement violates antitrust law when three criteria are met: (1) "the seller must have power in the tying-product market;" (2) "there must be a substantial threat that the tying seller will acquire market power in the tied-product market;" and (3) "there must be a coherent economic basis for treating the tying and tied products as distinct." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 37–40

NAR, MAR, and a local board in order to access the MLS. (*See* ECF No. 27, PageID.396; PageID.398 at ¶ 15; PageID.399 at ¶¶ 22–24; PageID.407 at ¶ 73; PageID.410 at ¶¶ 86, 88; PageID.412 at ¶¶ 98, 101; PageID.414 at ¶ 116.)

> A tying arrangement is a requirement by a seller that the sale of a product or service which possesses market power (access to the MLS) will only be made on the condition that the purchaser buy a second product or service (membership in a defendant realtor association) from the producer.

*Findling*, 2018 WL 1425952, at *3. In this case, as in *Findling*, "[t]here is no question that defendants are tying access to membership, but the question is whether plaintiff[s] allege[] facts such that the Court can reasonably infer that this arrangement violates § 1?" *Id.*

Plaintiffs allege that there is a tying arrangement based upon the "compulsory" or "mandatory requirement" of membership in, and that they are "coerced" and "force[d]" to be members of, the NAR, MAR, and a local board in order "to gain access to information only available on the MLS." (*See, e.g.*, ECF No. 27, PageID.395; PageID.396; PageID.397 at ¶¶ 1, 3–6; PageID.398 at ¶¶ 12, 15; PageID.399 at ¶¶ 17, 19, 21; PageID.400

---

(1984). Since the Court is dismissing plaintiffs' Section 1 claim on other grounds, it has not analyzed those three criteria.

at ¶ 26; PageID.401 at ¶ 33; PageID.402 at ¶¶ 37, 38; PageID.403 at ¶ 40; PageID.404 at ¶¶ 49, 52, 53; PageID.405 at ¶¶ 54–57; PageID.407 at ¶¶ 68, 71, 74; PageID.408 at ¶¶ 74, 75; PageID.410 at ¶¶ 84–86; PageID.411 at ¶¶ 91, 97; PageID.412 at ¶¶ 98–100, 102, 105; PageID.413 at ¶¶ 111, 112, 114; PageID.414 at ¶ 123; PageID.415 at ¶¶ 126, 128, 129, 131.)

The amended complaint contains one conclusory statement that "the assessment of fees . . . is unreasonable and excessive, especially for those brokers and agents who practice in smaller firms or individually." (ECF No. 27, PageID.399 at ¶ 16.) However, plaintiffs have not set forth any factual allegations regarding: (1) the amount of membership fees for the NAR, MAR, or any of the local boards; (2) how the fees were set; (3) whether the fees were unrelated to maintaining the defendant organizations' services or operational costs; or (4) if the fees were discriminatory. *See, e.g., Realty Multi-List, Inc.*, 629 F.2d at 1386 (concluding that membership criteria that is not "reasonably necessary to the accomplishment of the legitimate goals and narrowly tailored to that end ... [has] an anticompetitive effect which has no countervailing procompetitive benefit").

As such, and contrary to plaintiffs' representation, this is not a unique case. "Numerous federal and state courts have declined to hold that an antitrust violation is present where a multiple listing service merely conditions access to the multiple listing service upon membership in a board of realtors." *Venture Res. Grp. v. Greater N.J. Reg'l Multiple Listing Serv.*, No: 95-0401 (MLP), 1995 WL 866841, at \*2 (D.N.J. Aug. 23, 1995) (citing cases[4]). In fact, courts have been reaching that result for nearly 40 years—and longer. *See Martin-Trigona v. Nat'l Ass'n of Realtors*, 1978 WL 1310 (E.D. Ill. Feb. 22, 1978) ("The defendant realtors are all members of a voluntary trade association and as such may properly exclude any non-member from participation in its activities. Such exclusion does not constitute a violation of the antitrust laws"); *Grempler v. Multiple Listing Service of Harford Co., Inc.*, 266 A.2d 1, 4–

---

[4]The cases cited by the *Venture* court include:

> *Pomanowski v. Monmouth County Bd. of Realtors*, 89 N.J. 306, 446 A.2d 83, *cert. denied*, 459 U.S. 908 (1982); *State v. Cedar Rapids Bd. of Realtors*, 300 N.W.2d 127 (Iowa 1981); *Grempler v. Multiple Listing Service of Harford Co., Inc.*, 266 A.2d 1 (Md. App. Ct. 1970); *Pope v. Mississippi Real Estate Comm'n*, 872 F.2d 127 (5th Cir. 1989); *United States v. Realty Multi–List, Inc.,* 629 F.2d 1351 (5th Cir. 1980); *O'Riordan v. Long Island Bd. of Realtors, Inc.*, 707 F. Supp. 111 (E.D.N.Y.1988).

*Venture*, 1995 WL 866841, at \*2.

5 (Md. App. Ct. 1970) ("usually a private voluntary organization may accept or refuse members as it chooses, subject only to its own constitution, charter and by-laws").

Plaintiffs conclusory allegations of "excessive" fees (ECF No. 27, PageID.399 at ¶ 16) also do not suffice. *See Iqbal*, 556 U.S. at 678; *Garcia v. Cruz*, No. 2:25-cv-00440-JDW, 2025 WL 950386 at *3 (E.D. Pa. Mar. 28, 2025) (dismissing antitrust claims based on conclusory allegations); *Muhammad v. Nat'l Ass'n of Realtors*, No. 5:24-CV-5543, 2025 WL 2171143, at *13 (E.D. Pa. July 31, 2025) ("conclusory allegations of 'excessive' fees also do not suffice").

Although the Sixth Circuit has not directly addressed this issue, other circuits have. In *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312 (7th Cir. 2006), *cert. denied* 549 U.S. 1265 (2007), the plaintiff was a real estate broker who had to pay dues for unwanted membership in a realtor association in order to maintain MLS access. The court, applying the rule of reason, concluded that the tying arrangement (realtors association membership for MLS access) did not violate Section 1 of the Sherman Act because there was no competition in the tied market nor a substantial effect on interstate commerce. *Id*. at 316–320.

11

In the Fifth Circuit, the owners of a real estate agency sued NAR, the state agency regulating real estate brokers, and the county board of realtors for boycotting their agency by refusing them MLS access unless they joined the county realtors board.  *See Pope v. Miss. Real Estate Com.*, 872 F.2d 127 (5th Cir. 1989).  Applying the rule of reason, the court concluded that the requirements were not necessarily anti-competitive and, when administered properly, "membership requirements serve pro-competitive purposes." *Id.* at 130.  Aside from the board's fee, which was the same for each real estate agent, there were no allegations that any other requirement excluded the plaintiffs from participation on the board or the MLS.  *Id.*  Accordingly, the antitrust claims failed.

In sum, absent something more, "[f]orcing a buyer to purchase a product he otherwise would not have purchased is insufficient to establish the foreclosure of competition." *Reifert*, 450 F.3d at 318. That is because "it is widely recognized that private organizations may reasonably tie their benefits and services to membership." *Findling*, 2018 WL 1425952, at *4 (citing *United States v. Associated Press*, 321 U.S. 1, 21–23 (1945)) ("a private organization may restrict even economically necessary services to its members so long as it does not deny membership

arbitrarily"). In other words, there is no Section 1 violation simply because a voluntary trade organization requires membership to access MLS. *Findling*, 2018 WL 1425952, at *4 (citing *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458–459 (1986), and *Anderson v. United States*, 171 U.S. 604, 618–619 (1974)).

For all these reasons, the Court holds that plaintiffs' allegations of forced, coerced, compulsory, and/or mandatory membership in NAR, MAR, and a local board are insufficient to support a viable claim under Section 1 of the Sherman Act. *See Reifert*, 450 F.3d at 320-21 (dismissing the group boycott claim because "no licensed real estate agent was denied access to [the MLS] because of an anti-competitive measure"); *Pope*, 872 F.2d at 130 (concluding that the antitrust tying claim failed because the membership fee for the county board of realtors did not exclude the plaintiffs from participation on the board or the MLS).

The Court notes plaintiffs' reliance on *Thompson v. Metropolitan Multi List*, 934 F.2d 1566 (11th Cir. 1991), to support their tying allegations. Plaintiffs claim that *Thompson* involved "almost the exact same set of circumstances as are present here" because "the tying of the membership in the Board of Realtors to accessing information on the

MLS was unlawful and created an antitrust violation." (ECF No. 30, PageID.485.)

The Court does not find that Thompson involved the "almost the exact same set of circumstances" as alleged here. The plaintiffs in *Thompson* were a real estate broker and an association that competed with the defendant associations. *Thompson*, 934 F.2d at 1570. The Eleventh Circuit remanded the case for an assessment of whether defendants caused the plaintiff association to lose members, and whether some firms that would otherwise join the plaintiff association could not afford membership in both plaintiff and defendant associations. *Id*. at 1577-1578. In this case, plaintiffs make no similar allegations that would support a tying claim.

Plaintiffs also do not persuasively distinguish *Findling*.[5] Although

---

[5] The same MLS and one of the defendants in this case were involved in *Findling*, where the court declared that:

> Defendant Realcomp is a multiple listing service (MLS) controlled by the eight defendant realtor associations. . . . Plaintiff says that Realcomp's MLS is 'the most effective marketing tool for residential real estate in' southeast Michigan. Realcomp's MLS is 'available only to the members of the Realcomp Owners.' To become a Realcomp member, an applicant must be a licensed broker in southeast Michigan actively endeavoring to make or accept offers on property. They must also be a member or affiliate of one of the eight controlling realtor associations and pay a membership fee.

14

the *Findling* plaintiff was not a realtor and merely wanted to list property on the MLS because it is "the most effective marketing tool for residential real estate in" southeast Michigan, the *Findling* plaintiff lacked standing because he did not plead antitrust injury. 2018 WL 1425952, at \*\*2–3. *Findling* also held that the plaintiff did not, as required to state a tying claim, "show that defendants [we]re unreasonably or discriminatorily restricting access to the MLS." *Id*. at \*4. For these reasons, the Court finds that plaintiffs have not pleaded any facts that would change the *Findling* tying analysis.

For all the reasons stated above, the Court concludes that plaintiffs have failed to plead a plausible claim pursuant to Section 1 of the Sherman Act and **DISMISSES** count II.

## B.     Sherman Act – Section 2 Claim

Section 2 of the Sherman Act provides that persons shall not "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." *See* 15 U.S.C. § 2.  A monopoly claim "has two elements: (1) the possession of monopoly power

---

*Findling*, 2018 WL 1425952, at \*1 (citations omitted).

in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571 (1966). "Monopoly power is the ability to control prices and exclude competition in a given market." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306–307 (3d Cir. 2007).

A plaintiff may establish the first element with factual allegations of "direct evidence of supracompetitive prices and restricted output," or of indirect evidence that the defendant "ha[d] a dominant share in a relevant market[] and that significant 'entry barriers' protect that market." *Id.* at 307 (quoting *Harrison Aire, Inc. v. Aerostar Int'l*, 423 F.3d 374, 381 (3d Cir. 2005)). "Barriers to entry are factors, such as regulatory requirements, high capital costs, or technological obstacles, that prevent new competition from entering a market in response to a monopolist's supracompetitive prices." *Id.*

Plaintiffs allege that defendants have "tremendous, "absolute," and "significant" market power (ECF No. 27, PageID.396; PageID.399 at ¶ 23; PageID.400 at ¶ 27; PageID.413 at ¶ 111), and that each defendant

16

charges "substantial fees to each broker and agent" to become a member of its organization. (*Id.* at PageID.410–411 at ¶ 88.) It is not clear that plaintiffs allegations are more than conclusory. They are definitely not sufficient to constitute "direct evidence of supracompetitive prices and restricted output," and it is debatable whether they plausibly allege that defendants "ha[d] a dominant share in a relevant market[] and that significant 'entry barriers' protect that market." *Broadcom*, 501 F.3d at 307.[6] The Court need not decide this issue, however, as plaintiffs cannot satisfy the second element.

"The second element . . . the acquisition or possession of monopoly power must be accompanied by some anticompetitive conduct on the part of the possessor." *Id.* at 308 (citing *Verizon Commcn's Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)). "Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct

---

[6] A barrier to entry may be shown if a real estate association's membership fee is not related to its costs. *See Realty Multi-List, Inc.*, 629 F.2d at 1386 ("A sizeable membership fee which bears no relation to the cost factors outlined above may ... create a significant barrier to new entry into the association ...."). Plaintiffs' amended complaint contains no such allegation, as the only barrier to MLS entry they alleged is the requirement of membership in the NAR, MAR, and a local board. (See ECF No. 27, PageID.404 at ¶ 53 ("The requirement of membership in the Defendant organizations constitutes a conspiracy to monopolize the use of the MLS and creates barriers to the market for all realtors, agents and brokers who seek to enter the market but who do not wish to belong to one of the Defendant organizations.").)

17

to obtain or maintain monopoly power as a result of competition on some basis other than the merits." *Id.*

The Court finds that, even if plaintiffs can satisfy the first element, they cannot demonstrate "anticompetitive conduct" on the part of defendants, as plaintiffs' allegations do not show that defendants' willfully acquired such power through anticompetitive conduct. Plaintiffs allege the anticompetitive conduct is that "[d]efendants' practices ["of tying membership to access the MLS"] are anticompetitive and essentially create a monopoly which controls the MLS and its information" "due to the lack of any alternative to the MLS." (ECF No. 27, PageID.414 at ¶¶ 115, 116.)

However, many courts have determined defendants' alleged practice is not anticompetitive conduct at all and, in fact, promotes competition. *See, e.g., Realty Multi-List, Inc.*, 629 F.2d at 1368 ("Certainly the antitrust laws must allow reasonably ancillary restraints necessary to accomplish these enormously procompetitive objectives."); *Findling*, 2018 WL 1425952, at *2 (explaining that when the defendant restricted MLS access to those who paid a membership fee to join a realtor association, this promoted competition because MLS "provid[ed]

18

consumers with aggregated, streamlined information"); *Muhammad*, 2025 WL 2171143, at *15. The Court concurs with that reasoning.

Accordingly, defendants' motion to dismiss plaintiffs' Section 2 monopolization claim is **GRANTED** and count III is **DISMISSED**.

### C.   MARA Claim

In support of their MARA claim, plaintiffs allege that "the act of tying membership in their organizations to accessing the MLS is a restraint of trade as it deprives Plaintiffs of free choice as to whether to be a member and seeks to monopolize the information contained on and access to the MLS." (ECF No. 27, PageID.410 at ¶ 86.)

"[I]n construing all sections of [MARA], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes." M.C.L. § 445.784(2); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 368 n. 1 (6th Cir.2003) ("Because [MARA] and the Sherman Anti–Trust Act mirror each other, [the court] appl[ies] the same analysis to both the federal and state anti-trust claims."); *Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, No. 13-cv-14241, 2014 WL 5511517, at *7 (E.D. Mich. Oct. 31, 2014) (dismissing MARA claim based

19

on Sherman Act analysis), *aff'd*, 833 F.3d 680 (6th Cir. 2016); *First Med. Representatives, LLC v. Futura Med. Corp.*, 195 F. Supp. 2d 917, 922 (E.D. Mich.2002) ("Michigan courts apply Sherman Act analysis to the MARA ...."); *DXS, Inc. v. Siemens Med. Sys.*, 991 F. Supp. 859, 865 (E.D. Mich. 1997) ("Courts examining claims under [MARA] apply the same legal analysis as courts examining analogous claims under the Sherman Act.").

Accordingly, for the reasons stated above regarding plaintiffs' Sherman Act claims, the Court **GRANTS** the motion to dismiss plaintiffs' MARA claim and **DISMISSES** count I of the amended complaint.

### D.    Civil Conspiracy Claim

In count IV, plaintiffs allege a civil conspiracy based on defendants' alleged scheme to mandate persons become members of their organizations in order to access the MLS, which they control. As another judicial officer in this district recently stated:

> Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 486 N.W.2d 351 (1992).

*Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D.

Mich. 2021).

However, "a civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Shabazz v. ICWU Ctr. For Worker Health & Safety Educ.*, No. 1:18-cv-339, 2021 WL 6197402, at *12 (S.D. Ohio Dec. 30, 2021) (quoting *Burgess v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013)); *see also Nehls v. Hillsdale College*, 65 F. App'x 984, 992 (6th Cir. 2003) (citing *Admiral Ins. Co.,* 486 N.W.2d at 358–359 ("a conspiracy claim is not cognizable absent a cognizable underlying tort."); *Detroit Will Breathe*, 524 F. Supp. 3d at 710–711 (dismissing claims where a party "d[id] not allege that [the other party] committed any underlying tort").

In this case, plaintiffs' Sherman Act and MARA claims have been dismissed, and plaintiffs have not pleaded a viable underlying tort. Accordingly, the Court **GRANTS** the motion to dismiss plaintiffs' civil conspiracy claim and **DISMISSES** count IV.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motion to dismiss (ECF No. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that each of the motions for leave to

file supplemental authority (ECF Nos. 32, 35, and 38) is **GRANTED**.

**IT IS FURTHER ORDERED** that this cause of action is **DISMISSED**.

**SO ORDERED.**

Dated: March 30, 2026                    **s/Jonathan J.C. Grey**
                                         Jonathan J.C. Grey
                                         United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2026.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager